# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M.R.S. ENTERPRISES, INC.<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SHEET METAL WORKERS'<br>INTERNATIONAL ASSOCIATION<br>LOCAL 17 - BOSTON, and<br>SHEET METAL WORKERS'<br>INTERNATIONAL ASSOCIATION,<br><br>　　　　　Defendants. | C.A. NO.:　05 10694 JLT |

## DEFENDANT
## SHEET METAL WORKERS INTERNATIONAL ASSN.'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Michael T. Anderson, BBO #645533
DAVIS, COWELL & BOWE, LLP
8 Beacon Street, 4th Floor
Boston, MA 02108
Tel:  (617) 227-5720; Fax:  (617) 227-5767

Attorneys for Defendant Sheet Metal
Workers International Assn., AFL-CIO

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    The Relationship of the Federal Arbitration Act (FAA) to Actions under the Labor-Management Relations Act (LMRA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Standard of Review for LMRA Motions to Dismiss for Failure to Exhaust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.    This Is Not a Rule 12(b)(6) Motion. . . . . . . . . . . . . . . . 4

        2.    An LMRA Motion to Dismiss for Failure to Exhaust Is a "Non-Enumerated" Rule 12(b) Motion, Permitting Outside Evidence and Factual Resolution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        3.    In the Alternative, this Motion May Be Treated as a Rule 12(b)(1) Motion. . . . . . . . . . . . . . . . . . . . . . . . . . 6

        4.    An LMRA Motion to Dismiss for Failure to Exhaust is Analogous to a Motion to Stay under the FAA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    The Collective-Bargaining Agreement . . . . . . . . . . . . . . . . . . . 7

    B.    Step 1 Grievance Discussions . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.   The Union Did Not Block Arbitration. . . . . . . . . . . . . . . . . . . . . . 11

   A.   The Union Responded to the Employer's Step 1 Grievance. . . 11

   B.   The Employer Failed to Move its Grievance Forward. . . . . . 12

      1.   The Employer Was Free to Proceed to Step 2
           Unilaterally. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      2.   The Employer Bore the Burden of Proceeding. . . . . . . . . 13

   C.   The Employer's Duty to Exhaust Has Not Been Affected
        by the May 31, 2005 Expiration of the Agreement. . . . . . . . . 14

II.  Any Claim of Default Should Have Been Made to the Arbitrator. . . . 15

III. Even If the Court Had Authority to Rule on the Employer's Waiver
     Claim, the Court Would Have to Reject It. . . . . . . . . . . . . . . . . . . 17

   A.   The Union Did Not "Unequivocally Repudiate"
        Arbitration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

   B.   The Employer Cannot Show Prejudice. . . . . . . . . . . . . . . 18

IV.  The Court Should Dismiss, Rather than Stay, the Complaint. . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ii

## INTRODUCTION AND SUMMARY OF ARGUMENT

In this breach-of-contract lawsuit, the plaintiff has failed to exhaust the contract's grievance-arbitration procedure. The Court should dismiss this lawsuit under Fed.R.Civ.P. 12(b), 12(b)(1) and 43(e).

Plaintiff M.R.S. Enterprises, Inc. ("the Employer") is party to a collective-bargaining agreement with Defendant Sheet Metal Workers International Ass'n ("the International Union.") Complaint, ¶7. The Employer claims that the International Union breached the Agreement in 2003 and 2004 by failing to supply qualified workers on a Logan Airport construction project. Complaint, ¶¶11-21.

The Agreement creates a three-step grievance-arbitration procedure as the "sole and exclusive remedy for any asserted breaches of the Agreement." Agreement, Ex. A to Riley Aff., Article X; Complaint, ¶24. The Employer justifies its failure to exhaust that procedure by alleging that the International Union refused to proceed with the Employer's grievance. Complaint, ¶26.

This claim is groundless. The Court's review of this Motion is governed by Fed.R.Civ.P. 43(e), which allows the Court to consider evidence outside the pleadings and resolve factual disputes. The Court is not confined to the narrow standards of Rule 12(b)(6) review. To the contrary, the Court must decide arbitrability issues summarily, with all doubts resolved in favor of arbitration. We discuss the procedural law governing this Motion in the Standard of Review section below.

In Part I of the Argument, we show that the Union has not blocked the Employer's access to arbitration. The International Union responded to the Employer's Step 1 grievance in correspondence and a face-to-face meeting. The International Union rejected the Employer's settlement demands, but it did not deny the Employer's right to proceed further. The Employer was free to move its grievance forward to Step 2, with or without the Union's consent. This was the Employer's burden, not the Union's. *See Drake Bakeries, Inc. v. Local 50, Bakery & Confectionery Workers Union*, 370 U.S. 254, 266-267 (1964).

In Part II, we show that the Employer was required to make its claim of Union default to the arbitrator, not the Court. *General Dynamics Corp. v. Local 5, Marine & Shipbuilding Workers*, 469 F.2d 848, 853-854 (1st Cir. 1972); *H & M Cake Box, Inc. v. Bakery Workers Local 45*, 493 F.2d 1226, 1227 (1st Cir. 1974).

In Part III, we show that even if the Court had the authority to resolve the issue, it could not find a default of arbitration here. The LMRA requires an "unequivocal repudiation" before a party will be charged with a breach of its arbitration duty. *Communication Workers v. Western Electric Co.*, 860 F.2d 1137, 1144 (1st Cir. 1988). This standard is not met here. Nor can the Employer show any prejudice, a showing that is required before the Employer may bypass arbitration. *See Creative Solutions Group, Inc. v. Pentzer Corp.*, 252 F.3d 28, 33 (1st Cir. 2001).

2

In Part IV, we show that dismissal is the proper course under the LMRA, rather than a stay of proceedings. *General Dynamics*, 469 F.2d at 854.

## STANDARD OF REVIEW

### A.    The Relationship of Federal Arbitration Act (FAA) to Actions under the Labor-Management Relations Act (LMRA)

Suits for breach of collective-bargaining agreements are governed by Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. §185(a). Section 301 of the LMRA creates a body of substantive federal law promoting labor arbitration. *See Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451-459 (1957); 29 U.S.C. §173(d) (declaring LMRA policy favoring arbitration to resolve industrial disputes.)

The Federal Arbitration Act (FAA), 9 U.S.C. §§1 *et seq*., does not govern LMRA cases. *Derwin v. General Dynamics Corp.*, 719 F.2d 484, 488 (1st Cir. 1983).[1] Where there is a conflict, the LMRA is even more strongly pro-arbitration than the FAA. *See id.; see also, e.g., Goodall-Sanford, Inc. v. Textile Workers Local 1802*, 353 U.S. 550, 551 (1957) (rejecting FAA limits in LMRA case.)

---

[1]In *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), the Court held that the FAA applies to most individual employment contracts. However, courts after *Circuit City* continue to hold that the FAA does not govern collective-bargaining agreements subject to the LMRA. *See Electrical Workers Local 545 v. Hope Electrical Corp.*, 380 F.3d 1084, 1097-98 (8th Cir. 2004) (citing cases.)

However, FAA law is persuasive authority in LMRA cases where it does not conflict with LMRA policy. "[F]ederal courts in labor arbitration cases rely on FAA cases to inform their LMRA analysis." *Providence Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16, 19 n.3 (1st Cir. 2001).

### B. Standard of Review for LMRA Motions to Dismiss for Failure to Exhaust

#### 1. This Is Not a Rule 12(b)(6) Motion.

A motion to dismiss for failure to exhaust must be made at the earliest opportunity in an LMRA breach-of-contract lawsuit. *See Jones Motor Co. v. Teamsters Local 633*, 671 F.2d 38, 42-43 (1st Cir. 1982).

However, such a motion is not the same as a Rule 12(b)(6) motion. Courts are instructed to resolve arbitrability disputes in "an expeditious and summary hearing" with "restricted inquiry into factual issues." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22-23 & n.27 (1983) (FAA case). Courts must resolve doubts in favor of arbitrability, including any issue of "waiver, delay or a like defense to arbitrability," *id.,* 460 U.S. at 24-25; *see also Bechtel Construction, Inc. v. Laborers' Int'l Union*, 812 F.2d 750, 752-753 (1st Cir. 1987) (same for LMRA).

Yet the usual Rule 12(b)(6) standard is just the opposite: it would require all inferences to be drawn in favor of the plaintiff <u>opposing</u> arbitration, with the

4

plaintiff's allegations taken at face value. A Rule 12(b)(6) standard would force the defendant to wait until summary judgment or trial to vindicate its right to arbitration.

This would defeat the federal policy requiring "an expeditious and summary hearing," with doubts resolved in favor of arbitration. *Moses H. Cone Memorial Hospital*, 460 U.S. at 22-23 n.27. Discovery and pre-trial litigation are inconsistent with arbitration. *See Jones Motor Co.*, 671 F.2d at 42-43 & n.4. The Court should not frustrate this policy by forcing the parties through pre-trial litigation before resolving arbitrability.

> **2.    An LMRA Motion to Dismiss for Failure to Exhaust Is a "Non-Enumerated" Rule 12(b) Motion, Permitting Outside Evidence and Factual Resolution.**

Although the First Circuit has not expressly categorized such a motion, the Ninth Circuit's approach is persuasive. A motion to dismiss an LMRA breach-of-contract claim for failure to exhaust non-judicial remedies should be treated as a "non-enumerated" Rule 12(b) motion. *Inlandboatmen's Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1078 n.2 (9th Cir. 2002), *citing Ritza v Int'l Longshoremen's Union*, 837 F.2d 365, 368-369 (9th Cir. 1988). This approach allows the court to consider external evidence, and resolve factual disputes under Rule 43(e). *Dutra Group*, 279 F.3d at 1083; *Ritza*, 837 F.2d at 369. This motion must be made at the outset of the litigation, but it allows the Court to conduct the

"expeditious and summary hearing" with "restricted inquiry into factual issues" contemplated in *Moses H. Cone Memorial Hospital*, 460 U.S. at 22-23 n.27.

### 3.    In the Alternative, this Motion May Be Treated as a Rule 12(b)(1) Motion.

Other courts have treated a plaintiff's failure to exhaust non-judicial remedies as grounds for a Rule 12(b)(1) motion for lack of jurisdiction.  *See*, *e.g.*, *Corsini v. United Healthcare Corp.*, 965 F.Supp. 265, 268 (D.R.I. 1997) (ERISA case citing Ninth Circuit's *Ritza* decision.)  *See also Puerto Rico Telephone Co. v. Union Independiente de Empleados Telefonicos*, 129 F.Supp.2d 110, 111-112 (D.P.R. 2000) (dismissing employer's LMRA action for "lack of jurisdiction" because of failure to exhaust contractual remedies.)  In ruling on a Rule 12(b)(1) motion, courts may consider evidence outside the pleadings, and resolve factual disputes.  *See, e.g., Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

### 4.    An LMRA Motion to Dismiss for Failure to Exhaust is Analogous to a Motion to Stay under the FAA.

If this were an ordinary commercial case governed by the FAA, this Motion would arise under §3 of the FAA, 9 U.S.C. §3, as a motion to stay pending arbitration. In an LMRA case, however, the plaintiff's failure to exhaust usually calls for dismissal rather than a stay.  *General Dynamics Corp. v. Local 5, Marine & Shipbuilding Workers*, 469 F.2d 848, 854 (1st Cir. 1972).

6

Nevertheless, a motion to dismiss for failure to exhaust in an LMRA case should be reviewed in the same way as a motion to stay under the FAA.[2]  A stay motion under the FAA permits the Court to consider evidence outside the pleadings, and to resolve factual disputes bearing on arbitrability, under Fed.R.Civ.P. 43(e).  *See Productos Mercantiles e Industriales v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994); *O.R. Sec., Inc. v. Prof. Planning Assocs.*, 857 F.2d 742, 748 (11th Cir. 1988); *Legion Ins. Co. v. Insurance Gen. Agency*, 822 F.2d 541, 541-543 (5th Cir. 1987).

The label applied to the motion is less important than the practical result: that the Court has wide latitude to resolve factual disputes, with a presumption in favor of arbitrability.  Whether this Motion is treated as a non-enumerated Rule 12(b) motion, a Rule 12(b)(1) motion, or simply a motion analogous to an FAA stay motion, the Court has the power under Rule 43(e) to resolve factual disputes that it could not exercise under Rule 12(b)(6) standards.

## STATEMENT OF FACTS

### A.    The Collective-Bargaining Agreement

The Employer is suing the International Union for breach of a collective-

---

[2]The Court may treat this Motion as equivalent to a motion to stay pending exhaustion of the grievance procedure, if the Court concludes that dismissal is unwarranted.  *See Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 6 (1st Cir. 2004) (construing motion to dismiss as encompassing the lesser alternative remedy of a stay.)

bargaining agreement, the National Siding and Decking Agreement ("the

Agreement").  Complaint, ¶7.  That Agreement is attached as Ex. A to the Riley

Aff. hereto.

As the Employer acknowledges, the Agreement contains a mandatory

grievance and arbitration procedure.  Complaint, ¶24.  That procedure, Article X,

is a three-step process which begins with Step 1 (informal settlement "if

possible"), which may be appealed by either party in the absence of a resolution to

Step 2 (a two-member Siding and Decking Grievance Panel), whose decision is in

turn appealable to Step 3 (the Siding and Decking Arbitration Board).  The full

text of the relevant sections of Article X provides:

### ARTICLE X

The Union and the Employer, whether party to this Agreement
independently or as a member of a multi-employer bargaining unit,
agree to utilize and be bound by this Article.  The grievance
procedures of the National Siding and Decking Agreement are the
sole and exclusive remedy for any asserted breaches of this
Agreement and supersede the grievance procedures of any other
collective bargaining agreement that the Employer is signatory.

SECTION 1.  Step 1.  Grievances of the Employer or the Union arising
out of the interpretation or enforcement of this Agreement, shall be
settled between the Employer directly involved and the duly
authorized representative of the Union, if possible.  Both parties may
participate in conferences through representatives of their choice.

To be valid, grievances must be raised within thirty (30) calendar
days following the occurrence giving rise to the grievance, or, if the
occurrence was not ascertainable, within thirty (30) calendar days of
the first knowledge of the facts giving rise to the grievance.

8

SECTION 2.  Step 2.  Grievances not disposed of under the procedure described in Section 1 of this Article may be appealed jointly or by either party to the Siding and Decking Grievance Panel ("Grievance Panel").  Duplicate copies of the appeal shall be mailed to the following addresses:  Siding and Decking Grievance Panel, 25800 Northwestern Highway, Suite 1000, Southfield, Michigan 48075 and Sheet Metal Workers International Association Jurisdictional Department, 1750 New York Avenue, N.W., Washington, D.C. 20006.  The Grievance Panel shall be composed of two (2) members, one (1) of which shall be appointed by the General President of the Sheet Metal Workers International Association and one (1) of which shall be appointed by the National Association of Siding and Decking Contractors.  Both sides shall have equal voting power.  The Grievance Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Grievance Panel.

The Grievance Panel is empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation.  Except in the case of deadlock, the decision of the Grievance Panel shall be final and binding.

SECTION 3.  Step 3.  Grievances not settled as provided in Section 2 of this Article may be appealed jointly or by either party to the Siding and Decking Arbitration Board ("Arbitration Board").  The Arbitration Board shall consist of three (3) members appointed by the Union and three (3) members appointed by the Association. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board.  Appeals to the Arbitration Board shall be submitted within thirty (30) days after termination of the procedures described in Section 2 of this Article. The decision of the Arbitration Board shall be final and binding.

Riley Aff., Ex. A.

**B.    Step 1 Grievance Discussions**

On November 22, 2004, the Employer's former counsel Jane I. Milas sent a

Step 1 grievance letter to International Union President Michael J. Sullivan.  The

letter reads:

> This office represents M.R.S. Enterprises, Inc. in connection
> with the above-referenced project.  Pursuant to Article X, section 1 of
> the Agreement between M.R.S. Enterprises, Inc. ("MRS") and the
> Sheet Metal Workers International Association ("SMWA"), MRS
> raises the following grievance:
>
> Breach of the Agreement by the SMWA in connection with the
> Delta Terminal A project at Logan Airport, for failure to supply duly
> qualified Building Trades Journey persons, Specialty Sheet Metal
> Workers, and Specialty Trainees in sufficient numbers and ratios
> stipulated during the April 8, 2003 meeting in Washington, D.C. as may
> be necessary to properly execute work contracted for the Employer in the
> manner and under the conditions specified in the Agreement.
>
> MRS requests that this grievance proceed to step one, as
> provided in Article X, Section 1 of the Agreement.

Ex. B to the Riley Affidavit hereto.

On January 28, 2005, International Union General President Michael J.

Sullivan and his Assistant Joseph J. Nigro met with Roland and Steven Levesque

of M.R.S. Enterprises to discuss several pending issues, including M.R.S.

Enterprises' grievance over the Logan Airport project.  Nigro Aff. at ¶¶6-7 and

Ex. B.  M.R.S. demanded monetary restitution, in the form of damages and/or an

International Union loan to M.R.S. Enterprises.  *Id*., Nigro Aff., Ex. B (items 7 and

8 and p. 4).  Four days later, Steven Levesque wrote a letter repeating M.R.S.

10

Enterprises' demand for "compensation from the SMWIA for issues arising out of our use of sheet metal workers on the Delta project."  Nigro Aff., ¶8 and Ex. C. International Union officer Joseph Nigro responded with a March 2, 2005 letter rejecting the Employer's demand for monetary assistance, explaining that a loan of Union money would be illegal.  Nigro Aff., ¶9 and Ex. D.

At no point has the International Union blocked the Employer from appealing to Step 2 of the grievance procedure.  Nigro Aff., ¶¶7, 10; McClees Aff., ¶7; Riley Aff. ¶5.  M.R.S. Enterprises never invoked Step 2 by appealing to the National Siding and Decking Grievance Panel.  Nigro Aff., ¶11; McClees Aff. ¶6 and Ex. A; Riley Aff.,¶4.

## ARGUMENT

### I.    The Union Did Not Block Arbitration.

The Employer claims that the International Union failed to respond to its grievance, and thereby made arbitration impossible.  Complaint at ¶¶ 26-27.  This claim is wrong on both counts.

### A.    The Union Responded to the Employer's Step 1 Grievance.

The Union met with the Employer on January 28, 2005, and exchanged correspondence in February and March.  Nigro Aff., ¶¶7-10.  The Union rejected the Employer's settlement demands, but it has never repudiated the Employer's right to

proceed to the Siding and Decking Grievance Panel under Step 2, nor its right to appeal thereafter to the Arbitration Board under Step 3.  Nigro Aff., ¶¶7, 10; McClees Aff., ¶7; Riley Aff. ¶5.

### B.    The Employer Failed to Move its Grievance Forward.

#### 1.    The Employer Was Free to Proceed to Step 2 Unilaterally.

In any event, the Union could not have prevented the Employer from moving its Step 1 grievance forward unilaterally.

Once a Step 1 grievance has been filed, the Agreement provides no minimum or maximum time frame for Step 1 settlement discussions.  Step 1 contemplates informal settlement "if possible."  The Agreement encourages, but does not mandate, settlement conferences:  "Both parties *may* participate in conferences through representatives of their choice."  Article X, Section 1 (emphasis added), Ex. A to Riley Aff.  Such multi-step grievance provisions "are common fare in [collective-bargaining agreements] – and where they exist, courts typically cede the [parties] considerable leeway in evaluating the merit associated with a particular grievance and the resources it will expend to prosecute that grievance."  *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 24-25 (1st Cir. 2003).

No bilateral action is required as a condition for moving to Step 2.  Any grievance that has not been settled at Step 1 "may be appealed jointly or *by either party* to the Siding and Decking Grievance Panel."  Article X, Section 2 (emphasis

12

added.)  Even if the International Union had completely refused to respond, the Employer would have been free to take its grievance unilaterally to the Siding and Decking Grievance Panel under Step 2.

### 2.  The Employer Bore the Burden of Proceeding.

The Employer appears to blame the International Union for not taking the initiative to move the Employer's grievance forward.

This argument misses the point.  When an employer initiates a grievance, the burden of moving it forward to arbitration rests with the <u>employer</u>, not the union.  *See Drake Bakeries, Inc. v. Local 50, Bakery & Confectionery Workers Union*, 370 U.S. 254, 266-267 (1964).  In *Drake Bakeries*, an employer sued for breach of contract, alleging that the union waived arbitration by failing to demand arbitration of the employer's claim.  The Court rejected this claim:

> If the company had a claim for damages, the contract provided for the company's attempting to adjust its claim by consulting with the union.  Failing this, either party could take the matter to arbitration... [T]he employer was aware of the procedure to be followed.  It should have followed it here.

*Drake Bakeries,* 370 U.S. at 266-267.  In a footnote, 370 U.S. at 267 n.17, the *Drake Bakeries* Court cited *Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp.*, 70 F.2d 297, 299 (2d Cir. 1934) *aff'd* 293 U.S. 449 (1935), where Judge Learned Hand held:  "if the plaintiff meant to proceed further and enforce a claim for damages, the initiative rested upon it; it should have named the first arbitrator.

13

If it did not but sued instead, it was itself the party who fell in default in proceeding with such arbitration, not the defendant."  In other words, a plaintiff claiming breach of contract may not blame the defendant for failing to initiate arbitration proceedings against itself.  This is well-established law under both the LMRA[3] and the FAA.[4]

The Employer could have filed a Step 2 appeal, with or without the Union's consent.  The Employer failed to do this, but it did not thereby give itself the right to proceed in court.

### C.    The Employer's Duty to Exhaust Has Not Been Affected by the May 31, 2005 Expiration of the Agreement.

The Employer's duty to exhaust the grievance procedure has not been retroactively excused by the May 31, 2005 expiration of the Agreement.  The

---

[3]*Mautz & Oren, Inc., v. Teamsters Local 279*, 882 F.2d 1117, 1126 (7th Cir. 1989) ("it was Mautz & Oren, and not the Union, which was seeking relief for an alleged violation of the collective agreement;  the primary responsibility to initiate arbitration proceedings was therefore on Mautz & Oren, not the Union."); *United Ass'n of Journeymen v. Int'l Maintenance Co.*, 251 F.Supp.2d 1296, 1308 (M.D. La. 2002) (employer was obligated to proceed to next step of grievance procedure if it was dissatisfied with outcome of earlier step:  "The court agrees with [the union] that the burden of pursuing an appeal is logically vested in the party that actually has a reason to seek appellate review."); *Fosbroke v. Emerson College*, 1982 WL 2020 at *4, 96 Lab.Cas. ¶14,061 (D.Mass. 1982) (Caffrey, J.)

[4]*Sims v. Montell Chrysler, Inc.*, 317 F.Supp.2d 838, 843 (N.D.Ill. 2004) ("[E]very court that has passed on the issue has found that a defendant need not push litigation forward against itself– by actually commencing arbitration – to warrant an otherwise legitimate stay under Section 3 of the FAA."); *Rao v. Prest Metals*, 149 F.Supp.2d 1, 8-9 (E.D.N.Y. 2001) ("[N]othing in the statute indicates that once one party expresses an interest in arbitration, the other is under a duty to commence such a proceeding.")

Employer claims a breach of contract arising in 2003-2004, during the term of the Agreement.  Complaint, ¶18.  As such, the Employer's duty to exhaust the grievance-arbitration procedure is unaffected, even if the Agreement has subsequently expired. *See Litton Fin. Printing v. NLRB*, 501 U.S. 190, 205 (1991) ("if a dispute arises under the contract . . . it is subject to arbitration even in the postcontract period."); *Providence Journal Co. v. Providence Newspaper Guild*, 308 F.3d 129, 132 (1st Cir. 2002).

## II.    Any Claim of Default Should Have Been Made to the Arbitrator.

If the Employer wished to argue that the Union forfeited its right to arbitration by its pre-litigation conduct, it should have made this argument to the arbitrator, before bringing a damages claim in court.  *General Dynamics Corp. v. Local 5, Marine & Shipbuilding Workers*, 469 F.2d 848, 853-854 (1st Cir. 1972); *H & M Cake Box, Inc. v. Bakery Workers Local 45*, 493 F.2d 1226, 1227 (1st Cir. 1974); *Puerto Rico Telephone Co. v. Union Independiente de Empleados Telefonicos*, 129 F.Supp.2d 110, 111-112 (D.P.R. 2000).  This rule bars employer lawsuits complaining that the union has failed to process grievances from one step of the grievance procedure to the next.  *See Bechtel Construction, Inc. v. Laborers Int'l Union*, 812 F.2d 750, 753-754 & n.2 (1st Cir. 1987).

The Supreme Court recently reaffirmed the presumption that "the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability'" in an FAA case, *Howsam v. Dean Witter Reynolds, Inc.* 537 U.S. 79, 84 (2002).  The

15

Second Circuit followed *Howsam* in an LMRA case similar to this one, *Mulvaney Mechanical, Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 46 (2d Cir. 2003), to hold that "the issue of a [union's] repudiation most closely resembles the defenses to arbitrability such as waiver, estoppel or delay that the Supreme Court [in *Howsam*] listed as questions properly decided by arbitrators."

This is not a case where the union defendant waives arbitration by participating voluntarily in court litigation.  The First Circuit draws a distinction between waiver claims based on <u>pre</u>-litigation conduct, and waiver based on the defendant's voluntary use of court processes <u>after</u> the lawsuit is filed.  *See Jones Motor Co. v. Teamsters Local 633*, 671 F.2d 38, 42-43 n.4 (1st Cir. 1982) (distinguishing *General Dynamics* and *H & M Cake Box*, where union in *Jones Motor* failed to raise arbitrability until summary judgment motions.)  In the latter case, the Court is in as good a position as the arbitrator to decide whether the union's conduct in its own forum has waived arbitration.  *See id.*

In this case, however, the International Union is objecting to court litigation at the outset.  *Cf. Jones Motor Co.*, 671 F.2d at 43 n.4 (distinguishing *General Dynamics* and *H & M Cake Box,* because the unions in those cases raised arbitrability immediately.)  The Employer's claim of arbitration waiver here is based on the International Union's pre-complaint conduct, as in *General Dynamics,* 469

16

F.2d at 853-854 and *H & M Cake Box*, 493 F.2d at 1227.  The Employer should

therefore have made its waiver argument to the arbitrator, not the Court.

### III.   Even If the Court Had Authority to Rule on the Employer's Waiver Claim, the Court Would Have to Reject It.

#### A.    The Union Did Not "Unequivocally Repudiate" Arbitration.

Under the LMRA, a breach of an arbitration promise does not occur until the

breaching party "takes an unequivocal position that it will not arbitrate."

*Communication Workers v. Western Electric Co.*, 860 F.2d 1137, 1144 (1st Cir.

1988).  Prior to such an express refusal, the normal "give-and-take" between union

and management does not amount to a breach.  *Id.  See also Red Star Express Lines*

*v. Teamsters Local 170*, 809 F.2d 103, 107 (1st Cir. 1987) (employer did not

repudiate arbitration award by asking Union to hold it "temporarily in abeyance");

*Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1048-50 (1st Cir. 1977) (employer

did not repudiate arbitration, despite its initial "foot-dragging" response that

grievance "is not a proper subject under the Collective Bargaining Agreement.")

In this case, the International Union rejected the Employer's settlement

demands, but it did not repudiate the Employer's right to proceed further to Step 2

and beyond.  Even if the International Union had never responded to the

Employer's grievance at all, its inaction would not constitute repudiation.  "[M]ere

nonperformance, even though unjustified, is not per se a 'repudiation'" of an

arbitration agreement. *Drake Bakeries*, 370 U.S. at 263 n.10. *See also Local Joint Executive Board of Las Vegas v. Exber, Inc.*, 994 F.2d 674, 675-676 (9th Cir. 1993) (employer's failure to answer union grievances did not repudiate arbitration); *Aluminum Brick and Glass Workers v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545, 1548 (11th Cir. 1993) (employer letter that "it would be inappropriate to reopen" grievance was not unequivocal rejection of arbitration.)

### B.     The Employer Cannot Show Prejudice.

In order to bypass arbitration, the plaintiff must show prejudice from its opponent's alleged repudiation. *Creative Solutions Group, Inc. v. Pentzer Corp.*, 252 F.3d 28, 32 (1st Cir. 2001). If its opponent's conduct did not prevent the plaintiff from moving forward with arbitration, the plaintiff cannot show the requisite prejudice. *See id.*, 252 F.3d at 33. In *Creative Solutions*, the defendant's accounting firm failed to give the plaintiff information required by the parties' Agreement. 252 F.3d at 33. Because production of these documents was not a condition precedent for arbitration, however, the Court held that the plaintiff could not show prejudice sufficient to bypass arbitration. *Id*.

The same rule applies here. As we discuss above, the Employer was free to proceed unilaterally under Step 2 if it believed that Step 1 discussions were stalled. *See Sheet Metal Workers Local 162 v. Jason Mfg. Co.*, 900 F.2d 1392, 1398 (9th Cir. 1990) (party could proceed unilaterally through arbitration where

18

opponent fails to respond); *Corallo v. Merrick Central Carburetor, Inc.*, 733 F.2d 248, 251 n.1 (2d Cir. 1984) (same). The Employer therefore suffered no prejudice from any Union response to its Step 1 grievance. This alone prevents the Employer from suing directly in court.

## IV.    The Court Should Dismiss, Rather than Stay, the Complaint.

In LMRA cases, dismissal is normally the appropriate course where the plaintiff has not exhausted the grievance procedure, as opposed to the stay pending arbitration normally entered in FAA cases.[5] *General Dynamics Corp.*, 469 F.2d at 854. *See also H & M Cake Box,*, 493 F.2d at 1227; *Puerto Rico Telephone Co.*, 129 F.Supp.2d at 111-112.

One reason for this difference is that labor agreements depend on more elaborate, multi-step procedures than commercial arbitration clauses. *See Mulvihill*, 335 F.3d at 24-25. Unlike commercial arbitration, the grievance process in labor cases is intended as a valuable exercise in itself, since it has a "therapeutic value" for industrial peace. *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 568 (1960).

---

[5]Even in FAA cases, courts may dismiss rather than stay when all issues are arbitrable. *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 156 & n.21 (1st Cir. 1998). If the Court concludes that dismissal is unwarranted, the Court may treat this Motion as equivalent to a motion to stay. *See Fit Tech*, 374 F.3d at 6 (construing motion to dismiss as encompassing the lesser alternative remedy of a stay.)

In this case, an FAA-like order requiring immediate Step 3 arbitration would be inappropriate, where the Employer did not even pass through the intermediate Step 2 proceedings before the Siding and Decking Grievance Panel. The Court may not order a more accelerated form of labor arbitration than the parties negotiated. *Otis Elevator Co. v. Elevator Constructors Local 4*, ____ F.3d ___, 2005 WL 1111217 at *7 (1st Cir. 2005). The Employer did not invoke a Step 2 appeal, and so the Court may not order the parties to go straight to Step 3 arbitration. A simple dismissal for failure to exhaust the three-step grievance procedure is the more appropriate course.

## CONCLUSION

The Court should dismiss the Complaint.

Dated:  June  9, 2005                    DAVIS, COWELL & BOWE, LLP


                                         By:  _____/s/ Michael Anderson_____
                                              Michael T. Anderson, BBO #645533

                                         8 Beacon Street, 4th Floor
                                         Boston, MA 02108
                                         Tel:  (617) 227-5720; Fax:  (617) 227-5767

                                         Attorneys for Defendant Sheet Metal
                                         Workers International Assn., AFL-CIO