## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

M.R.S. ENTERPRISES, INC.

      Plaintiff,

    v.

SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION
LOCAL 17 - BOSTON, and
SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION,

      Defendants.

C.A. NO.:  05 10694 JLT

## AFFIDAVIT OF PATRICK J.  RILEY IN SUPPORT OF
## DEFENDANT SHEET METAL WORKERS' INTERNATIONAL ASSN.'S
## MOTION TO DISMISS

I, Patrick J. Riley, being first duly sworn, depose and say under penalty of perjury as follows:

1.      I am Director of the Legal Department of the Sheet Metal Workers' International Association, AFL-CIO.  I am a 1977 graduate of Georgetown University Law Center.  I have been a member in good standing of the bar of the District of Columbia since 1978.  The facts described in this affidavit are personally known to me. If called as a witness, I could and would competently testify to the contents of this affidavit.

1

2.     The Sheet Metal Workers' International Association and M.R.S. Enterprises are parties to a collective-bargaining agreement, the National Siding and Decking Agreement for the United States of America between National Association of Siding and Decking Contractors and Sheet Metal Workers' International Association, AFL-CIO, for the term of January 1, 2000 through May 31, 2005. A true and correct copy of the 2000-2005 National Siding and Decking Agreement is attached as Exhibit A hereto.

3.     On November 29, 2004, the office of Michael J. Sullivan, General President of the Sheet Metal Workers International Association, received a letter dated November 22, 2004 from Jane I. Milas of Garcia & Milas in New Haven on behalf of M.R.S. Enterprises. A true and correct copy of Ms. Milas's letter to Mr. Sullivan is attached as Exhibit B hereto.

4.     To my knowledge, the Sheet Metal Workers' International Association's Jurisdiction Department has never received a copy of any Step 2 appeal to the Siding and Decking Grievance Panel by M.R.S. Enterprises raising Ms. Milas' November 22, 2004 grievance, as provided under the National Siding and Decking Agreement, Article X, Section 2.

5.     To my knowledge, the Sheet Metal Workers' International Association has never repudiated the grievance-arbitration procedure of the 2000-2005 National Siding and Decking Agreement, Article X, as to any grievance filed against it by any signatory employer, including M.R.S. Enterprises.

2

I swear under penalty of perjury that the foregoing is true and correct.

Dated: June _6_, 2005

Patrick J Riley

Patrick J. Riley


DISTRICT OF COLUMBIA ) ss


On _June 6, 2005_, 2005, before me, _Lisa A Mead_, a Notary Public, personally appeared: _Patrick J. Riley_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacities, and that by his/her signatures on the instrument the person(s) or the entity by their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS by hand and official seal.


Signature: _Lisa A Mead_

Notary Public


My Commission expires on _March 31, 2006_



3

EXHIBIT A

# NATIONAL SIDING AND DECKING AGREEMENT

## NATIONAL ASSOCIATION OF SIDING AND DECKING CONTRACTORS

### AND

## SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION AFL-CIO

Agreement entered into this 1st day of June 2000, by and between the National Association of Siding and Decking Contractors (NASDC) and the Sheet Metal Workers' International Association (SMWIA or Union).

### ARTICLE I

**SECTION 1.** This Agreement covers the rates of pay and conditions of employment of all employees of the Employer engaged in job site fabrication, handling, erection, installation, dismantling, conditioning, adjustment, alterations, repairing and servicing of all ferrous or nonferrous metal work and all other material used in lieu thereof of those items set forth in Section 2 of this Article. The provisions of this contract shall govern the performance of such work in any geographic area, including any area within the jurisdiction of any local union affiliated with SMWIA.

The Employer further agrees that the operating of any equipment or new technology which has as its essential purpose replacing or changing those jobs or procedures traditionally performed by sheet metal workers, and all other sheet metal work, will be covered by this Agreement and considered to be the jurisdictional claims of the Sheet Metal Workers' International Association.

**SECTION 2.**

(a)    Exterior application of manufactured and/or job site fabricated metal decking, siding and exterior appurtenances thereto, excluding all roofs (with the exception of the work described in Section 2(b) and Section 7 of this Article I).

(b)    The erection of pre-engineered metal buildings, pre-manufactured gas stations and appurtenances thereto.

(c)    The erection and/or job site fabrication of draft or fire curtains and appurtenances thereto.

**SECTION 3.** Any work not specifically covered under the terms and conditions of this Agreement shall be performed under the terms and conditions of the appropriate Local Building Trades Collective Bargaining Agreement (Local Agreement). Specifically excluded under the terms and conditions of this Agreement are: all types of metal lagging (including lagging and decking on industrial paint finishing systems) and all air systems, commercial or industrial and all roofs (with the exception of the work described in Section 2b and Section 7 of this Article I).

**SECTION 4.**

(a)    The Employer agrees to notify the Business Manager of the job site Local Union of any work outlined in Article I, Section 2, which the Employer is going to bid, prior to bid.

(b)    It is further agreed that to determine preponderance and historical practice of the scope of work noted in Article I, Section 2, there must be a due process mechanism for both the Union and the Employer.

    1.    If a Business Manager objects to the use of this Agreement based on the historical practice and that the preponderance of work noted in the scope of work in Article I, Section 2, is performed in accordance with the building trades area wages and standards, the burden of proof to use this Agreement shall be on the Employer and/or its association.

    2.    If this Agreement has been utilized historically within a Local Union in the performance of the scope of work in Article I, Section 2, and the Local Union's Business Manager challenges the use of this Agreement, then the burden of proof of controlled market share based on the preponderance of work performed in accordance with the building trades area wages and standards shall be on the Local Union.

    3.    In any event, if the Local Union is doing the preponderance of the work in Article I, Section 2, the Employer will be allowed to bring in the first two (2) Journey persons; the job site Local Union shall supply the second two (2) Journey persons; thereafter the workers shall be supplied on a fifty-fifty (50/50) basis, i.e. the Employer will be allowed to bring in the fifth Journey person; the job site Local Union shall supply the sixth Journey person, etc.

**SECTION 5.** This is a separate stand-alone Collective Bargaining Agreement, and its provisions shall govern the performance of any work described in Article I of this Agreement. Where this National Agreement is silent, the conditions of the Local Building Trades Agreement shall prevail.

**SECTION 6.** As a condition of this Agreement, the Employer agrees to sign a SMWIA Local Building Trades Collective Bargaining Agreement where the contractor's home office is located. It is understood that the grievance procedure of the National Siding and Decking Agreement is the sole and exclusive remedy for any asserted breaches, disputes and alleged violations of this Agreement.

**SECTION 7.** Local unions, state and regional councils, employers and employers' associations may develop a working addendum which utilizes the guidelines and/or variations of this agreement to pursue architectural, metal roofing, and other specialty types of work. These addenda are only applicable to those parties signatory thereto.

12/22/2000

**SECTION 8.**

(a)     Should it become necessary for this Agreement to be used on maintenance work such as the General Presidents' Maintenance Agreement, NMAPC, other types of national agreements, or local project agreements, it is understood and agreed that no adjustment will be made in the wage scale or conditions of the job site Local Union agreement until all other crafts that are to be employed on the project have adjusted their wage scale to the conditions of this Agreement, then, and only then, will this Agreement or Resolution 78 be used. Notwithstanding the above, Employers shall be allowed mobility of manpower as set forth in Article I, Section 4(b)(3) of this Agreement.

(b)     The job site Local Union may grant Resolution 78 relief in order for contractors to be more competitive on work within the jurisdiction of the Local Union.

(c)     For the purpose of federal or state prevailing wage projects only, that are posted prior to the start of the job, it is the understanding of the parties that the Employer shall be permitted to use Building Trades Apprentices in the proper ratios in the job site local Building Trades agreement. In the event that the Department of Labor, pursuant to the wage determination finds that within an area covered by this Agreement, that the use of Journey person(s), Specialty Sheet Metal Workers and/or Specialty Trainees is the prevailing practice, the Employer shall be permitted to use the classification in the prevailing ratios as per the Department of Labor. (per Memorandum of Understanding dated October 30, 1995)

The above paragraph does not preclude the use of Journey person(s) Specialty Workers being paid the Journey person(s) prevailing rate at the job site.

## ARTICLE II

**SECTION 1.** No Employer shall subcontract or assign any of the work described herein which is to be performed at a job site to any contractor, subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein including, without limitations, those relating to union security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

**SECTION 2.** Integrity Clause: A "bad-faith employer" for purposes of this Agreement is an Employer that itself, or through a person or persons subject to an owner's control, has ownership interests (other than a non-controlling interest in a corporation whose stock is publicly traded) in any business entity that engages in work within the scope of Article I hereinabove using employees whose wage package, hours and working conditions are inferior to those prescribed in this Agreement, or has ownership interest (other than a non-controlling interest in a corporation whose stock is publicly traded) in any business entity that engages in work within the scope of the Standard Form of Union Agreement (SFUA) using employees whose wage package, hours and working conditions are inferior to those prescribed in the appropriate SFUA.

An Employer is also a "bad-faith employer" when it is owned by another business entity as its direct subsidiary or as a subsidiary of any other subsidiary within the corporate structure thereof

through a parent-subsidiary and/or holding-company relationship, and any other business entity within such corporate structure is engaging in work within the scope of Article I of this Agreement or of the appropriate SFUA using employees whose wage package, hours and working conditions are inferior to those prescribed in this Agreement or in the appropriate SFUA.

Any Employer that signs this Agreement or is covered thereby by virtue of being a member of a multi-employer bargaining unit expressly represents to the Union that it is not a "bad-faith employer" as such term is defined in Section 2(a) hereinabove and, further, agrees to advise the Union promptly if at any time during the life of this Agreement said Employer changes its mode of operation and becomes a "bad-faith employer." Failure to give timely notice of being or becoming a "bad-faith employer" shall be viewed as fraudulent conduct on the part of such Employer.

In the event any Employer signatory to or bound by this agreement shall be guilty of fraudulent conduct as defined above, such Employer shall be liable to the Union for liquidated damages at the rate of $500.00 per calendar day from the date of failure to notify the Union until the date on which the Employer gives notice to the Union. The claim for liquidated damages shall be processed as a grievance in accordance with, and within the time limits prescribed by, the provisions of Article X.

## ARTICLE III

**SECTION 1**. Each Employer covered by this Agreement shall employ at least one (1) Journey person sheet metal worker who is not a member of the firm on all work specified in Article I of this Agreement.

**SECTION 2**. Building Trades Journey person(s) and/or Specialty Sheet Metal Workers may be used as foremen or lead men Journey person(s), it being understood that a Specialty Worker who acts in the capacity of the Journey person Foreman may do so only when qualified Building Trades Journey person(s) are unavailable. He or she shall be paid the Building Trades Journey person(s) total package and shall be considered a Journey person(s) for purposes of determining ratio compliance. Only Building Trades Journey person(s), Specialty Sheet Metal Workers and Specialty Trainees shall be employed on any work described in Article I.

**SECTION 3**. There shall be a standard and uniform Letter of Assignment provided to all contractors which shall be completed and forwarded to NASDC, 1000 Maccabees Center, 25800 Northwestern Highway, Southfield, Michigan 48075, who will in turn forward a copy to SMWIA, and the local union. This notification shall be forwarded to NASDC within 10 days of the Employer receiving an executed purchase order for a particular job. In the event the Employer violates this provision of the Agreement, monetary damages, as well as cancellation of the Agreement, may be imposed by the grievance procedure contained in Article X of the Collective Bargaining Agreement between the parties.

## ARTICLE IV

**SECTION 1**. The Union agrees to furnish upon request by the Employer duly qualified Building Trades Journey person(s), Specialty Sheet Metal Workers and Specialty Trainees (wherever the

12/22/2000

Specialty Trainee classification is mentioned in this Agreement it may include Apprentices and Pre-apprentices solely at the Local Union's Business Manager's discretion) in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in this Agreement. In the event the Union is unable to supply an adequate number of sheet metal workers within forty-eight (48) hours, excluding Saturday, Sunday and holidays, the Employer may directly hire such employees from any source and refer them to the Union.

## ARTICLE V

**SECTION 1.** The Employer agrees to require membership in the Union, as a condition of continued employment of all employees performing any of the work specified in Article 1 of this Agreement, within eight (8) days following the beginning of such employment or the effective date of this Agreement, whichever is the later, provided the Employer has reasonable grounds for believing that membership is available to such employees on the same terms and conditions generally applicable to other members and that membership is not denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining membership.

**SECTION 2.** If during the term of this Agreement the Labor-Management Relations Act of 1947 shall be amended by Congress in such manner as to reduce time within which an employee may be required to acquire Union membership, such reduced time shall become immediately effective instead of and without regard to the time limit specified in Section 1 of this Article.

**SECTION 3.** The provisions of this Article shall be deemed to be of no force and effect in any state to the extent to which the making or enforcement of such provision is contrary to law. In any state where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this Article shall be deemed to take effect as to involved employees immediately upon compliance with such conditions.

## ARTICLE VI

**SECTION 1.** The regular work day shall consist of eight (8) hours labor on the job between 6:00 a.m. and 6:00 p.m., and the regular work week shall consist of five (5) consecutive eight (8) hour days labor on the job, beginning with Monday and ending with Friday of each week.

(a)     Where conditions warrant, as determined by the Employer, and with advance notification to the Local Union, the regular work day may consist of ten (10) hours labor on the job between 6:00 a.m. and 6:00 p.m. and the regular work week shall consist of four (4) ten (10) hour days labor on the job, between Monday and Friday. The ten (10) hour schedule must last at least one week.

(b)     Except as otherwise provided pursuant to Sections 1 (c) and Section 2 of this Article, all work performed outside the regular working hours and performed during the regular work week and on Saturday shall be paid at one and one-half (1½) times the regular rate, except all hours worked on Sundays and holidays shall be paid at two (2) times the regular rate.

New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day, or days locally observed as such, and Sunday shall be recognized as holidays. All work performed on holidays shall be paid as follows: two (2) times the regular rate of pay.

(c)     Notwithstanding the provisions of Section 1(a) and (b) of this Article, when conditions warrant, a makeup day may be scheduled for Monday through Saturday between the hours of 6:00 a.m. and 6:00 p.m. with a maximum of ten (10) hours a day. Anything over ten (10) hours will be at time and a half. Time lost during a week including holidays may be made up by working up to ten (10) hours a day Monday through Saturday. However, no makeup day shall be less than eight (8) hours even if overtime applies on those hours over forty (40). The Employer shall notify the Union when scheduling a make-up day.

**SECTION 2.**

(a)     Shifts may be established when considered necessary by the Employer, with advance notification to the Union. Shift hours and rates will be as follows:

First Shift: Eight (8) hours pay for eight (8) hours worked plus one-half (½) hour unpaid lunch period. Starting time between the hours 6:00 a.m. to 8:00 a.m.

Second Shift: Eight (8) hours pay for seven and one-half (7½) hours worked plus one-half (½) hour unpaid lunch period. Starting time between the hours 2:30 p.m. to 4:30 p.m.

Third Shift: Eight (8) hours pay for seven (7) hours worked plus one-half (½) hour unpaid lunch period. Starting time between the hours 10:00 p.m. to 12:00 midnight.

Shifts shall be established and continued for a minimum of three (3) consecutive work days.

(b)     The determination of the start of multiple shifts is the prerogative of the Employer. If it is necessary to use employees from a previous shift within a twenty-four (24) hour period, the overtime provisions of Section 1(b) of this Article shall apply and the shift shall be considered the first day of shift operations for purposes of satisfying the requirement that shifts shall be established for a minimum of three (3) consecutive work days.

(c)     By mutual consent of the Employer and the Local Union, the starting and quitting times of any shift, including day work, may be changed for all or any portion of a particular job.

**SECTION 3.** Wages at the established rates specified herein shall be paid on the job at or before quitting time of each week as specified in the Local Agreement for the Employer's home area. However, employees when discharged shall be paid in full.

**SECTION 4**. Each employee who reports for work by direction of the Employer, and is not placed to work, shall be entitled to two (2) hours pay at the established rate, unless properly notified two (2) hours prior to commencement of work.

**ARTICLE VII**

**SECTION 1**. Employees employed on a job within fifty (50) miles of the job site Local Union's contractual referral point or place of residence, whichever is closer, shall be governed by the regular working hours specified herein and shall provide for themselves necessary transportation within said limits from home to job at starting time and from job to home at quitting time.

**SECTION 2**. When employed outside of the limits specified in Section 1 of this Article, each employee shall receive cents per mile in accordance with the formula established by the Internal Revenue Service (I.R.S.) (taxsites.com) for such travel mileage. The amount established by the I.R.S. shall be reviewed on January 1 of each year and shall remain in effect for that calendar year. As of the signing of this Agreement, the mileage formula was thirty-two and one-half ($0.32.5) cents per mile. At the Employer's choice, as to the foregoing method, board and expenses shall be paid.

**ARTICLE VIII**

**SECTION 1**. All wage and fringe benefit payments due pursuant to this Agreement will only be effective on the anniversary date of the Local Agreement. Building Trades Journey person(s), Specialty Sheet Metal Workers and Specialty Trainees performing any work specified in Article I of this Agreement shall have their hourly wage rate determined by reference to the appropriate building trades SFUA, as modified by the provisions of this Agreement.

(a)     Building Trades Journey person(s) shall receive the Journey person(s) wage rate and fringe benefits specified in the appropriate Local Agreement.  Contributions on behalf of Journey person(s) to Industry Promotion Funds shall be made as specified in Addendum I.  All other working conditions for such employees shall be as set forth in this Agreement.

(b)     Specialty Sheet Metal Workers shall be paid as follows:

1st 30 days:    45% of Journey person wage rate in Local Agreement

2nd through
6th month:    45% of Journey person wage rate in Local Agreement plus pension fund
and local insurance only;

7th through
12th month:    45% of Journey person wage rate in Local Agreement plus fringe benefits
specified in Addendum I;

7

2nd year* -     55% of Journey person wage rate in Local Agreement plus fringe benefits specified in Addendum I;

3rd year* -     70% of Journey person wage rate in Local Agreement plus fringe benefits specified in Addendum I;

4th year* -     70% of Journey person wage rate in Local Agreement plus fringe benefits specified in Addendum I;

5th year* -     70% of Journey person wage rate in Local Agreement plus fringe benefits specified in Addendum I;

6th year* -     Specialty Worker eligible for a Journey person upgrade. Accredited work hours in conjunction with each local union's training and/or upgrading procedures should be the basic criteria for specialty sheet metal workers to achieve Journey person status in their respective local unions.

**SECTION 2.** For purposes of this Agreement, the home local shall mean the local union having geographic jurisdiction where the Employer's primary place of business is located.

(a)     For all work performed within the home local, and where employees are sent outside the home local to perform work in a geographic area that is not within the jurisdiction of another local union, wages shall be determined by reference to the building trades SFUA governing the home local.

(b)     For those Building Trades Journey person(s), Specialty Sheet Metal Workers and Specialty Trainees sent outside the home local or hired outside the home local, to perform work within the jurisdiction of another local union, such employees' wage rate shall be determined by reference to the building trades SFUA for the job site local unless the home local's total wage package is higher.

(c)     In all cases, all fringe benefits and working conditions for such employees shall be governed by the provisions of this Agreement.

---

*

The Association Office shall keep track of contributions to establish an accredited year as 1500 hours worked. The Association Office will forward these hours to the SMWIA, attention of the General President, at the end of each calendar quarter.

**SECTION 3.** All job crews will be made up of the following ratios:

**When Working Inside the Home Local Jurisdiction:**

| | |
|---|---|
| **First Person** | -Journey person |
| **Second Person** | -Specialty |
| **Third Person** | -Specialty |
| **Fourth Person** | -Specialty |

These ratios now repeat.

**When Working Outside the Home Local Jurisdiction:**

| | | | |
|---|---|---|---|
| First Person | -Journey person | Ninth Person | -Journey person |
| Second Person | -Specialty | **Tenth Person** | **-Local Specialty** |
| **Third Person** | **-Local Journey person** | Eleventh Person | -Specialty |
| Fourth Person | -Specialty | **Twelfth Person** | **-Local Journey person** |
| Fifth Person | -Specialty | Thirteenth Person | -Specialty |
| **Sixth Person** | **-Local Journey person** | **Fourteenth Person** | **-Local Specialty** |
| **Seventh Person** | **-Local Specialty** | Fifteenth Person | -Journey person |
| **Eighth Person** | **-Local Specialty** | **Sixteenth Person** | **-Local Specialty** |

These ratios now repeat.

Where the local union provides a Building Trades Journey person, that Journey person shall be qualified for the work required.

In addition, one (1) out of every four (4) employees may be a Specialty Trainee. A Specialty Trainee may only replace a Specialty Sheet Metal Worker in the above ratios.

**SECTION 4.** (a) The Employer agrees to be bound by the Agreement and Declaration of Trust documents, and any amendments thereto, which establish any health and welfare fund with which an employee covered by this Agreement participates.

    (1)    The Employer shall contribute on behalf of all Building Trades Journey person(s) to the health and welfare fund established in the Local Agreement for the employee's home local in the amount specified by such agreement.

            Where Building Trades Journey person(s) are employed outside the jurisdiction of their home local, employers signatory to this Agreement shall contribute health and welfare contributions to the health and welfare fund for the employee's home local. There shall be no duplication of health fund contributions.

    (2)    The Employer may elect to pay health fund contributions on Specialty Sheet Metal Workers, either to a local health fund or to the National Sheet Metal Workers'

9

12/22/2000

Health Fund, as long as there is no interruption of health care benefits to the participant. Prior to any change of the health fund benefits, both the Association and SMWIA must be contacted.

(3)    When Building Trades Journey person(s), Specialty Sheet Metal Workers and Specialty Trainees are hired outside the home local to perform work within the jurisdiction of another local union, health insurance contributions on behalf of such employees shall be paid in accordance with the rate of the job site local.

(b)    Where an Employer is obligated to contribute to the NHF, the Employer will remit as directed by the Board of Trustees to the Sheet Metal Workers' National Health Fund on hours paid. Premium hours worked (overtime hours) will be paid for at an equivalent premium contribution rate. The NHF contribution rate for Plan 9 benefits during the calendar year 2000 is $3.34 per hour. The Employer agrees to honor the annual rate increase, to be determined by the Board of Trustees, provided such notice of the increase is communicated to the Employer sixty (60) days prior to the effective date and the increase in the contribution rate to the NHF shall not exceed twenty-five (25%) percent of the previous contribution rate per year.

**SECTION 5.** The Employer shall make contributions to the Stabilization Agreement of Sheet Metal Industry (SASMI) for work performed under this Agreement on behalf of all Specialty Sheet Metal Workers and Specialty Trainees.

**SECTION 6.** The Employer agrees to be bound by the Agreement and Declaration of Trust Document, and any amendments thereto, establishing the Sheet Metal Workers' National Pension Fund "NPF" or any local pension fund to which contributions are due. Contributions will be remitted as directed by the Board of Trustees of the applicable fund.

Effective June 1, 2000, the Employer shall make a contribution to the NPF which shall not exceed $3.26 per hour for all hours worked by a Specialty Sheet Metal Worker. Nothing in this Agreement shall limit the ability of Specialty Sheet Metal Workers to request that the NPF reciprocate contributions to their Home Local Union's Pension Fund under the terms of the International Reciprocity Agreement. Further, the parties to this CBA understand that contributions made under this CBA and predecessor CBA's are subject to the International Reciprocity Agreement.

Effective June 1, 2001, the Employer shall make a contribution to the NPF which shall not exceed $3.46 per hour for all hours worked by a Specialty Sheet Metal Worker.

Effective June 1, 2002, the Employer shall make a contribution to the NPF which shall not exceed $3.56 per hour for all hours worked by a Specialty Sheet Metal Worker.

**SECTION 7.** The Employer agrees to honor political contribution authorization from its employees who are union members in the following form:

"I hereby authorize the Employer to deduct from my pay Five ($0.05) Cents for each hour worked, and to forward that amount to SMWIA-PAL. This authorization is

signed voluntarily and with the understanding that my voluntary contributions to SMWIA-PAL and/or AFL-CIO Committee on Political Educational Political Contribution Committee - "COPE-PCC" will be used to make political contributions and expenditures in connection with federal, state and local elections. I am aware that the contribution is subject to the prohibitions and limitations of the Federal Election Campaign Act, that the suggested Five ($0.05) Cents an hour donation is only a guideline, that I am free to contribute more or less than the suggested amount without reprisal and the SMWIA and its affiliated local union will not favor or disadvantage me by reason of the amount of my contribution or my decision not to contribute. This authorization may be revoked at any time by mailing notices of revocation by U.S. Registered or Certified Mail, Return Receipt Requested, to the Treasurer, SMWIA-PAL, 1750 New York Avenue, N.W., Washington, DC 20006, and to my Employer. Contributions or gifts to SMWIA-PAL are not deductible as charitable contributions for federal income tax purposes."

The political contribution deduction shall be made on each pay period, during which an employee who has performed compensated service has in effect a voluntarily executed political contribution deduction authorization. The money shall be remitted within twenty (20) days following the first (1st) day of each month thereafter to PAL Political Fund, 1750 New York Avenue, N.W., Washington DC 20006, accompanied by a form stating the name and hours worked for each employee for whom a deduction has been made.

**SECTION 8.**  Contributions provided for in this Section will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the Siding and Decking Industry, improve the technical and business skills of Employers, stabilize and improve Employer-Union relations and promote support and improve the employment opportunities for employees. No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

(a)    The Employer shall pay the appropriate Local Industry Fund (where the work is performed), as per the local agreement, to maximum of Ten ($0.10) Cents; and the National Association of Siding and Decking Industry Promotion Fund (NASD IPF) Thirty ($0.30) Cents per hour for each hour worked after the effective date of this Agreement by each employee (Building Trades Journey person(s) and Specialty Sheet Metal Workers) of the Employer covered by this Agreement.

(b)    The Forty ($0.40) Cents per hour contribution to the NASD IPF and local industry funds shall be remitted by a single check on or before the twentieth (20th) day of the succeeding month, along with the prescribed remittance form which will indicate the home local for each employee. Checks and remittance forms will be addressed to the National Association of Siding and Decking Contractors, 1000 Maccabees Center, 25800 Northwestern Highway, Southfield, Michigan 48075-1000. NASDC shall remit all contributions to the industry fund of the employee's home local within ten (10) days of receipt, together with reports identifying the sources of the contributions.

11                              12/22/2000

(c)     The NASD IPF shall submit to the Sheet Metal Workers' International Association not less often than semi-annually written reports describing accurately and in reasonable detail the nature of activities in which they engaged or which they support directly or indirectly with any of their funds. One time per year, the NASD IPF shall include in such written report a financial statement attested to by a certified public accountant containing their balance sheets and detailed statements of annual receipts and disbursements. Further specific detailed information in regard to the NASD IPF activities or their receipts and/or expenditures shall be furnished to SMWIA upon written request.

(d)     Grievances concerning use of NASD IPF funds for purposes prohibited under Section 8(a) or violations of other subsections of this Section may be processed by SMWIA directly to the Siding and Decking Arbitration Board under the provisions of Article X, Section 3 of this Agreement. In the event such proceeding results in a deadlock, either party may, upon ten (10) days notice to the other party submit the issue to final and binding arbitration. The Arbitrator shall be selected by the General President of the Union and the President of the Association. The Arbitrator shall be authorized to impose any remedial order he deems appropriate of violation of this Section, including termination of the Employer's obligation to contribute to the NASD IPF. The authority of the Arbitrator is expressly limited to a determination of a deadlocked issue under this Section (Section 8, Article VIII), and no other.

(e)     Grievances concerning use of local industry fund monies to which an Employer shall contribute for purposes prohibited under Section 8(a) or for violations of other subsections of this Section shall be handled under the provisions of Article X of this Agreement. The Siding and Decking Arbitration Board, under the provisions of Article X, Section 3 shall be authorized to impose any remedial order for violation of this Section, including termination of the Employer's obligation to contribute to the local industry fund.

**SECTION 9.**

(a)     The Employer will contribute to the International Training Institute ("ITI") for the Sheet Metal and Air Conditioning Industry Ten ($0.10) Cents per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the twentieth (20th) day of the succeeding month and shall be remitted as designated by the Trustees of the Fund, or for purposes of collection and transmittal through Sheet Metal Workers' National Benefit Funds, P.O. Box 14176, Ben Franklin Postal Station, Washington DC 20044. The above mentioned Ten ($0.10) Cents contribution to the ITI shall be used for the training of siding and decking industry workers.

Effective June 1, 2001, the Employer will contribute to the ITI, twelve ($0.12) cents per hour for all hours worked by a Specialty Sheet Metal Worker.

The Employer and the Union shall encourage the ITI to implement a training program with the coordination of an instructor.

12/22/2000

(b)     Effective July 1, 2000 there is hereby created the National Siding and Decking Training Fund ("NSDTF"). The Trustees for the NSDTF shall be appointed by the National Association of Siding and Decking Contractors. The General President of SMWIA shall appoint two (2) advisors to the NSDTF. Effective November 1, 2001, this Fund shall be administered jointly by an equal number of representatives of the Employers and the Union, in accordance with the Fund's Declaration and Agreement of Trust. Said Trust shall conform to all requirements of law and a copy of same, together with any amendments thereto, shall be considered as part of this Agreement as though it was set forth herein at length. The Employer agrees to pay ten ($0.10) cents per hour worked to this Fund. This contribution shall be remitted by check on or before the twentieth (20th) day of the succeeding month, along with the prescribed remittance form. Checks and remittance forms will be addressed to the National Association of Siding and Decking Contractors, 1000 Maccabees Center, 25800 Northwestern Highway, Southfield, Michigan 48075-1000.

(c)     The Employer will contribute to the appropriate Local Joint Apprenticeship Fund in conformity with this Section. This contribution shall be paid on all hours worked by all employees covered by this Agreement. Payment should be made to the Local Joint Apprenticeship Fund established in the appropriate Local Agreement. For Building Trades Journey person(s) (and apprentices and pre-apprentices as noted in Article IV, Section 1), the contribution shall be the amount established in the Local Agreement. For Specialty Sheet Metal Workers and Specialty Trainees, the contribution shall be the amount established in the Local Agreement, subject to a maximum contribution of Ten ($0.10) Cents per hour for each hour worked by Specialty Sheet Metal Workers and Specialty Trainees.

For those employees performing work within the jurisdiction of the home local, or sent to perform work outside the home local, as provided in Article VIII, Section 2(a) or (b), contributions shall be made to the Local Joint Apprenticeship Fund established in the Local Agreement for the home local.

For employees hired outside of the jurisdiction of the home local to perform work within the jurisdiction of another local union, as provided in Article VIII, Section 2(b), contributions shall be made to the Local Joint Apprenticeship Fund established in the Local Agreement for the job site.

(d)     The Employer will contribute to the National Energy Management Institute Committee, a jointly administered trust fund, Three ($0.03) Cents per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the twentieth (20th) day of the succeeding month and shall be remitted as designated by the Trustees of the Fund, or for the purposes of collection and transmittal through Sheet Metal Workers' National Benefit Funds, P.O. Box 14176, Ben Franklin Postal Station, Washington, DC 20044.

12/22/2000

**SECTION 10.**

(a)     The Employer agrees to make a charitable contribution in the amount of One ($0.01) Cent per hour for each hour worked by all Specialty Sheet Metal Workers and Specialty Trainees of the Employer covered by this Agreement to the Sheet Metal Scholarship Fund. Payment shall be made on or before the twentieth (20th) day of the succeeding month and shall be remitted as designated by the Trustees of the Fund, or for purposes of collection and transmittal through Sheet Metal Workers' National Benefits Fund, P.O. Box 14176, Ben Franklin Postal Station, Washington, DC 20044.

(b)     The Employer will contribute to the Sheet Metal Occupational Health Institute, Inc. Trust Fund Two ($0.02) Cents per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the twentieth (20th) day of the succeeding month and shall be remitted as designated by the Trustees of the Fund, or for purposes of collection and transmittal through Sheet Metal Workers' National Benefit Funds, P.O. Box 14176, Ben Franklin Postal Station, Washington, DC 20044.

**ARTICLE IX**

**SECTION 1.** All employees covered by this Agreement shall provide for themselves all necessary hand tools.

**SECTION 2.** All employees covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport men, tools, equipment or materials; facilities for such transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and his or her personal tools.

**ARTICLE X**

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article. The grievance procedures of the National Siding and Decking Agreement are the sole and exclusive remedy for any asserted breaches of this Agreement and supersede the grievance procedures of any other collective bargaining agreement that the Employer is signatory.

**SECTION 1.** Step 1. Grievances of the Employer or the Union, arising out of the interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

12/22/2000

**SECTION 2.** Step 2. Grievances not disposed of under the procedure described in Section 1 of this Article may be appealed jointly or by either party to the Siding and Decking Grievance Panel ("Grievance Panel") Duplicate copies of the appeal shall be mailed to the following addresses: Siding and Decking Grievance Panel, 25800 Northwestern Highway, Suite 1000, Southfield, Michigan 48075 and Sheet Metal Workers International Association Jurisdictional Department, 1750 New York Avenue, NW, Washington, D.C. 20006. The Grievance Panel shall be composed of two (2) members, one (1) of which shall be appointed by the General President of the Sheet Metal Workers International Association and one (1) of which shall be appointed by the National Association of Siding and Decking Contractors. Both sides shall have equal voting power. The Grievance Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Grievance Panel.

The Grievance Panel is empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation. Except in the case of deadlock, the decision of the Grievance Panel shall be final and binding.

**SECTION 3.** Step 3. Grievances not settled as provided in Section 2 of this Article may be appealed jointly or by either party to the Siding and Decking Arbitration Board ("Arbitration Board"). The Arbitration Board shall consist of three (3) members appointed by the Union and three (3) members appointed by the Association. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the Arbitration Board shall be submitted within thirty (30) days after termination of the procedures described in Section 2 of this Article. The decision of the Arbitration Board shall be final and binding.

**SECTION 4.** In the event of a non-compliance within thirty (30) calendar days following the mailing of a decision of the Siding and Decking Grievance Panel or the Siding and Decking Arbitration Board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal law. If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such relief as is directed by the courts.

**SECTION 5.** Failure to exercise the right of appeal at any step thereof within the time limit provided therefor shall void any right of appeal applicable to the facts and remedies of the grievances involved. There shall be no cessation of work by strike or lockout while the procedures provided for in this Article are pending. Except in case of deadlock, the decision of the Siding and Decking Arbitration Board shall be final and binding.

## ARTICLE XI

Where the Employer is required to furnish safety equipment the employee shall sign a statement to the effect that he has received the equipment and that he will return the equipment when he finishes the job.

## ARTICLE XII

**SECTION 1.** It is understood and agreed that the Employers signatory to this Agreement shall not sign a stipulation to be bound to the Plan for Settlement of Jurisdictional Disputes in the Construction Industry, local or regional jurisdictional disputes board, nor to be bound by their decisions with regard to any work within the scope of Article I of this Agreement. Any such stipulation that previously may have been entered into, or on behalf of the Employer, is rescinded by execution of this Agreement. It is further understood that the parties to this Agreement shall not submit any dispute with regard to any work within the scope of Article I of this Agreement to the Plan for Settlement of Jurisdictional Disputes in the Construction Industry or local or regional jurisdictional disputes board.

**SECTION 2.** The foregoing Section 1 shall remain in effect until all other Employers in the construction industry having agreements with this, or any other union, affiliated with the Building and Construction Trades' Department, have signed a stipulation to be bound by the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry, or its successors with regard to any work within the scope of Article 1 of this agreement.

## ARTICLE XIII

**SECTION 1.** This Agreement and Addendum, attached hereto, shall become effective on the 1st day of June, 2000, and remain in full force and effect until the 31st day of May 2005, and shall continue in full force from year to year thereafter unless written notice of reopening is given by any party to the other parties not less than ninety (90) days prior to the expiration date.

**SECTION 2.** If, pursuant to federal or state law, any provision of this Agreement shall be found by a court of competent jurisdiction to be void or unenforceable, all of the other provisions of this Agreement shall remain in full force and effect. The parties agree to meet and negotiate a substitute provision.

**SECTION 3.** Each Employer hereby waives any right it may have to repudiate this Agreement during the term of this Agreement, or during the terms of any extension, modification or amendment to this Agreement.

**SECTION 4.** Employers bound by this Agreement shall include those which have executed a written authorization which designates the Association to act as that Employer's collective bargaining representative for all matters relating to this Agreement. Such Employer shall hereafter be bound by any subsequent modification, renewal or renegotiation of this Agreement by said Association, unless the Employer withdraws its authorization by written notice to that Association, as well as the Union and such notice is received by the Association and the Union, at least one hundred and fifty (150) days prior to the current expiration date of this Agreement.

12/22/2000

**In witness whereof,** the parties hereto affix their signatures and seal this _10th_ day of
_January_____, 2001.

National Association of Siding and
Decking Contractors

By:_____
    Richard Pellar, President

Sheet Metal Workers' International
Association

By:_____
    Michael Sullivan, General President

17

12/22/2000

## LETTER OF ASSENT

This is to certify that the undersigned Employer has examined and agrees to comply with all of the existing terms and conditions of the Collective Bargaining Agreement (CBA) by and between Sheet Metal Workers' International Association (Union), 1750 New York Avenue, N.W., Washington DC  20006, and National Association of Siding and Decking Contractors, (NASDC), 1000 Maccabees Center, 25800 Northwestern Highway, Southfield, MI  48075, hereinafter called the "Association."  It is also agreed by the undersigned Employer that any notice given by the Union to the Association pursuant to the provisions of the CBA shall be notice to the Employer and shall have the same legal force and effect as though it were served upon the Employer personally.  Finally, the Employer agrees that, unless he notifies the Union and the Association to the contrary by registered mail at least one hundred fifty (150) days prior to the termination date of this CBA or any subsequent Agreements, the Employer will be bound and adopt all agreements reached by the Union and the Association during subsequent negotiations.

FOR THE EMPLOYER:

By:_____       Workers' Compensation  No.:
      Authorized Representative
Its:_____       _____

 

                                    State Unemployment Comp No.:

_____

Company Name                     _____

 

_____       Federal Employer ID No.:

Address

                                    _____

Security Deposit _____
               yes or no
The undersigned Business Representative of SMWIA Local _____ certifies that he/she has been provided a copy of the foregoing agreement.

 

Sheet Metal Workers Local _____

 

_____

Business Manager

 

_____

 

_____

Address

NOTE:    Please execute the above in triplicate.  Return one (1) copy to SMWIA, 1750 New York Avenue, N.W., Washington DC, 20006, and one
            (1) copy to NASDC, 1000 Maccabees Center, 25800 Northwestern Hwy., Southfield, MI,  48075.

                            12/22/2000

# ADDENDUM
## Effective June 1, 2000 through May 31, 2005

**Specialty Worker:**

1st accredited year -

| | |
|---|---|
| 1st 30 days: 2nd through 6th month: | 45% of Journey person wage rate in Local Agreement |
| | 45% of Journey person wage rate in Local Agreement plus pension fund and local insurance only; |
| 7th through 12th month: | 45% of Journey person wage rate in Local Agreement plus full benefit contributions; |

2nd accredited year -     55% of Journey person wage rate in Local Agreement plus full benefit contributions.

3rd - 5th accredited year -

| | |
|---|---|
| Base Wage | (70% of Local Building Trade Rates) |
| Health Fund | As per Local Agreement or NHF |
| National Pension Fund | $3.26 |
| Additional NPF contribution of .20 an hour as of June 1, 2001 | $3.46 |
| Additional NPF contribution of .20 an hour as of June 1, 2002 | $3.56 |
| SASMI | 3% of base wage, H&W, and Pension contribution |
| Local Apprentice Fund | As per Local Agreement, maximum $0.10 |
| International Training Institute | $0.10 |
| Additional ITI contribution of .02 an hour as of June 1, 2001 | $0.12 |
| NEMI | $0.03 |
| Local Industry Fund | As per Local Agreement, maximum $0.10 |
| NSDTF | $0.10 |
| NASD IPF | $0.30 |
| SMOHIT | $0.02 |
| Scholarship | $0.01 |

6th accredited year -

Specialty Worker eligible for a Journey person upgrade. Accredited work hours in conjunction with each local union's training and/or upgrading procedures should be the basic criteria for specialty sheet metal workers to achieve Journey person status in their respective local unions.

All current Specialty Workers will maintain the 70% wage scale. All Specialty Workers who have completed five (5) years as a Specialty Worker under the National Siding and Decking Agreement as of July 1, 1998 will become eligible for Journey person status.

**Building Tradesman:**

| | |
|---|---|
| Base Wage | As per Building Trades Rates |
| Fringe Benefits | As per Building Trades Rates |
| Local Industry Fund | As per Local Agreement, maximum $0.10 |
| NSDTF | $0.10 |
| NASD IPF | $0.30 |

Where a UNION collects the local fringe benefits as set forth above, the Local Union is required to send a copy of the local monthly contribution report to the National Association of Siding & Decking Contractors and the Sheet Metal Workers' International Union offices.

W0128296.DOC/cjk/a29/52341/

12/22/2000

# ADDENDUM
## Effective June 1, 2000 through May 31, 2005

**Specialty Worker:**

1st accredited year -

| | |
|---|---|
| 1st 30 days: | 45% of Journey person wage rate in Local Agreement |
| 2nd through 6th month: | 45% of Journey person wage rate in Local Agreement plus pension fund and local insurance only; |
| 7th through 12th month: | 45% of Journey person wage rate in Local Agreement plus full benefit contributions; |

2nd accredited year -     55% of Journey person wage rate in Local Agreement plus full benefit contributions.

3rd - 5th accredited year -

| | |
|---|---|
| Base Wage | (70% of Local Building Trade Rates) |
| Health Fund | As per Local Agreement or NHF |
| National Pension Fund | $3.26 |
| Additional NPF contribution of .20 an hour as of June 1, 2001 | $3.46 |
| Additional NPF contribution of .10 an hour as of June 1, 2002 | $3.56 |
| SASMI | 3% of base wage, H&W, and Pension contribution |
| Local Apprentice Fund | As per Local Agreement, maximum $0.10 |
| International Training Institute | $0.10 |
| Additional ITI contribution of .02 an hour as of June 1, 2001 | $0.12 |
| NEMI | $0.03 |
| Local Industry Fund | As per Local Agreement, maximum $0.10 |
| NSDTF | $0.10 |
| NASD IPF | $0.30 |
| SMOHIT | $0.02 |
| Scholarship | $0.01 |

6th accredited year -

Specialty Worker eligible for a Journey person upgrade. Accredited work hours in conjunction with each local union's training and/or upgrading procedures should be the basic criteria for specialty sheet metal workers to achieve Journey person status in their respective local unions.

All current Specialty Workers will maintain the 70% wage scale. All Specialty Workers who have completed five (5) years as a Specialty Worker under the National Siding and Decking Agreement as of July 1, 1998 will become eligible for Journey person status.

**Building Tradesman:**

| | |
|---|---|
| Base Wage | As per Building Trades Rates |
| Fringe Benefits | As per Building Trades Rates |
| Local Industry Fund | As per Local Agreement, maximum $0.10 |
| NSDTF | $0.10 |
| NASD IPF | $0.30 |

Where a UNION collects the local fringe benefits as set forth above, the Local Union is required to send a copy of the local monthly contribution report to the National Association of Siding & Decking Contractors and the Sheet Metal Workers' International Union offices.

W0128296.DOC/cjk/a29/52341/

12/22/2000

**In witness whereof,** the parties hereto affix their signatures and seal this _10th_ day of _January_, 2000. /

National Association of Siding and
Decking Contractors

By: _Richard J Pellar_

Richard Pellar, President

Sheet Metal Workers' International
Association

By: _Michael J. Sullivan_

Michael Sullivan, General President

12/22/2000

EXHIBIT B

# GARCIA & MILAS

ATTORNEYS AND COUNSELORS AT LAW
A PROFESSIONAL CORPORATION

**44 TRUMBULL STREET**
**NEW HAVEN, CT**
06510

JANE I. MILAS
(203) 773-3824
----
FACSIMILE
(203) 782-2312
----
E-MAIL
jmilas@garciamilas.com

cc: Patrick R
✓ Joe W

*[RECEIVED stamp: NOV 30 2004, OFFICE OF GENERAL PRESIDENT]*

November 22, 2004

VIA CERTIFIED MAIL, RETURN RECEIPT

Mr. Michael J. Sullivan
General President
Sheet Metal Workers International Association
1750 New York Avenue, N.W.
Washington, D.C  20006

      Re:  M.R.S. Enterprises, Inc.
            Delta Terminal A at Logan Airport

Dear Mr. Sullivan:

      This office represents M.R.S. Enterprises, Inc. in connection with the above-referenced project.  Pursuant to Article X, section 1 of the Agreement between M.R.S. Enterprises, Inc. ("MRS") and the Sheet Metal Workers International Association ("SMWA"),  MRS raises the following grievance:

      Breach of the Agreement by the SMWA in connection with the Delta Terminal A project at Logan Airport, for failure to supply duly qualified Building Trades Journey persons, Specialty Sheet Metal Workers, and Specialty Trainees in sufficient numbers and ratios stipulated during the April 8, 2003 meeting in Washington, D.C. as may be necessary to property execute work contracted for by the Employer in the manner and under the conditions specified in the Agreement.

**Exhibit B**

M. Sullivan
November 22, 2004
Page two


     MRS requests that this grievance proceed to step one, as provided in Article X, section 1 of the Agreement.

Sincerely yours,

Jane I. Milas

JIM/mef
cc.    Roland Levesque

     Joseph Bergantino
     Business Manager
     Local 17, Sheet Metal Workers International Association
     1157 Adams Street
     Dorchester, MA  02124-5788 (via certified mail)



CERTIFIED MAIL™

7003 1010 0001 6695 5145

MR. MICHAEL J. SULLIVAN
GENERAL PRESIDENT
SHEET METAL WORKERS INTERNATIONAL ASSOCIATION
1750 NEW YORK AVENUE, N.W.
WASHINGTON, D.C. 20006

Closed 11. 11/24/04

20006+5386 63

GARCIA & MILAS, P.C.
LAW OFFICES
44 TRUMBULL STREET
NEW HAVEN, CONNECTICUT 06510