# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M.R.S. ENTERPRISES, INC.<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SHEET METAL WORKERS'<br>INTERNATIONAL ASSOCIATION<br>LOCAL 17 - BOSTON, and<br>SHEET METAL WORKERS'<br>INTERNATIONAL ASSOCIATION,<br><br>　　　　Defendants. | C.A. NO.:  05 10694 JLT |

## AFFIDAVIT OF JOSEPH J. NIGRO IN SUPPORT OF
## DEFENDANT SHEET METAL WORKERS' INTERNATIONAL ASSN.'S
## MOTION TO DISMISS

I, Joseph J. Nigro, being first duly sworn, depose and say under penalty of perjury as follows:

1.　　I am Assistant to the General President of the Sheet Metal Workers' International Association, AFL-CIO. My offices are in Washington, D.C. The facts described in this affidavit are personally known to me. If called as a witness, I could and would competently testify to the contents of this affidavit.

2.　　The Sheet Metal Workers' International Association and M.R.S. Enterprises are parties to a collective-bargaining agreement, the National Siding and Decking

1

Agreement for the United States of America between National Association of Siding and Decking Contractors and Sheet Metal Workers' International Association, AFL-CIO, for the term of January 1, 2000 through May 31, 2005.

    3.    I have been involved in grievance discussions with M.R.S. Enterprises involving several matters arising with various Sheet Metal Workers local unions in the Northeast. Since early 2004, Sheet Metal Workers Locals 38, 40 and 63 in New York, Connecticut and Western Massachusetts have maintained grievances against M.R.S. Enterprises for breaching its labor agreements by using other trades to perform Sheet Metal Workers work. These grievances do not involve the Logan Airport project in Boston. Nor do they involve Sheet Metal Workers Local 17 in Boston.

    4.    On November 29, 2004, the office of Michael J. Sullivan, General President of the Sheet Metal Workers International Association, received a grievance letter dated November 22, 2004 from Jane I. Milas of Garcia & Milas in New Haven on behalf of M.R.S. Enterprises, claiming "Breach of the Agreement by the SMWA in connection with the Delta Terminal A project at Logan Airport." Logan Airport in Boston is under the jurisdiction of Sheet Metal Workers Local 17.

    5.    On December 27, 2004, the office of Michael J. Sullivan, General President of the Sheet Metal Workers International Association, received a letter dated December 20, 2004 from M.R.S. Enterprises President Roland O. Levesque Sr. The letter stated: "We have not received a suitable response from the Sheet Metal Workers International

Association (SMWIA) with respect to the financial harm caused to our firm by the SMWIA on the Delta Terminal A project at Logan Airport, Boston, Massachusetts." A true and correct copy of Mr. Levesque's December 20, 2004 letter to Mr. Sullivan is attached as Exhibit A hereto.

6. On January 28, 2005, International Union General President Michael Sullivan and I met with Roland O. Levesque Sr. and Steven Levesque of M.R.S. Enterprises in Washington, D.C. M.R.S. prepared an agenda for the meeting (which erroneously gave the meeting date as January 28, 2004 rather than January 28, 2005.) A true and correct copy of M.R.S. Enterprises' agenda for the January 28, 2005 meeting is attached as Exhibit B hereto.

7. The January 28, 2005 meeting included a discussion of both the Local 38, 40 and 63 grievances against M.R.S. Enterprises, as well as M.R.S. Enterprises' problems with the International Union regarding the Logan Airport Delta project. To my knowledge, this January 28, 2005 meeting was the first time M.R.S. Enterprises' problems with the International Union regarding the Logan Airport Delta project was discussed in a formal meeting. At the January 28, 2005 meeting, neither representative of M.R.S. Enterprises demanded to move its grievance to the next step of the grievance procedure, nor did either demand immediate arbitration. Neither Michael Sullivan nor I denied M.R.S. Enterprises' right to proceed to the next levels of the grievance procedure if our settlement discussions were unsuccessful. Michael Sullivan and I did not discuss

3

arbitration with the Levesques, or any of the future steps of the grievance procedure, in connection with M.R.S. Enterprises' grievance at all.

8. On February 1, 2005, Steven Levesque of M.R.S. Enterprises sent a letter to International Union General President Michael Sullivan. A true and correct copy of this February 1, 2005 letter is attached as Exhibit C hereto.

9. On March 2, 2005, I sent Steven Levesque of M.R.S. Enterprises a letter responding to the issues he raised in his February 1, 2005 letter to Michael Sullivan. A true and correct copy of this March 2, 2005 letter is attached as Exhibit D hereto. On page 2 of my letter, I wrote that "With respect to ongoing grievances against MRS Enterprises, the business managers agreed at our meeting to place all grievances in abeyance for the time being." I was referring to a February 11, 2005 meeting, at which the business managers of Locals 38 and 63 agreed to hold their Step 3 appeals in their grievances against M.R.S. Enterprises temporarily in abeyance in hopes of settlement. Neither I nor, to my knowledge, any other International Union representative has ever told M.R.S. Enterprises that M.R.S. Enterprises must hold its grievance against the International Union in abeyance.

10. To my knowledge, the Sheet Metal Workers' International Association has never repudiated the grievance-arbitration procedure of the 2000-2005 National Siding and Decking Agreement, Article X, as to any grievance filed against it by M.R.S. Enterprises.

4

11. To my knowledge, the Sheet Metal Workers' International Association's Jurisdiction Department has never received a copy of any Step 2 appeal to the Siding and Decking Grievance Panel by M.R.S. Enterprises raising its November 22, 2004 grievance, as provided under the National Siding and Decking Agreement, Article X, Section 2.

I swear under penalty of perjury that the foregoing is true and correct.

Dated: June 6th, 2005

_____
Joseph J. Nigro

DISTRICT OF COLUMBIA            )   ss

On June 6, 2005, 2005, before me, Lisa A. Mead, a Notary Public, personally appeared: Joseph J. Nigro personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacities, and that by his/her signatures on the instrument the person(s) or the entity by their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS by hand and official seal.

Signature: _____
Notary Public

My Commission expires on March 31, 2006

# EXHIBIT A

**MRS ENTERPRISES, INC.**

December 20, 2004

Mr. Michael Sullivan
General President
Sheet Metal Workers International Association
1750 New York Avenue, NW
Washington, DC 20006



Dear Mr. Sullivan,

We have not received a suitable response from the Sheet Metal Workers International Association (SMWIA) to our grievance against the SMWIA with respect to the financial harm caused to our firm by the SMWIA on the Delta Terminal A project at Logan Airport, Boston, Massachusetts.

In addition, the local and national representatives of the SMWIA have failed to enact a comprehensive plan for market recovery within New England to ensure that MRS Enterprises Inc, by employing members SMWIA, remains competitive with other trades.

Therefore, in accordance with Article VIII, Section 4 of the National Association of Siding and Decking Contractors (NASDC) Agreement, we have given formal notice to terminate the Agreement on the stipulated expiration date. We will do the same with respect to Agreements with Local 40 and Local 17 as well.

Thank you.

Sincerely,

Roland O Levesque Sr.
President


Cc:  Richard Pellar, President NASDC
     Anthony Asher, NASDC
     Joseph Bergentino – Business Manager SMWIA Local 17
     David Roche – Business Manager SMWIA Local 40

**Exhibit A**

# EXHIBIT B



**ENTERPRISES, INC.**

Meeting with SMWIA – Washington D.C
January 28, 2004
Agenda

Attendees:   Michael Sullivan -  SMWIA
Joseph Nigro - SMWIA
Roland Levesque Sr. -  MRS
Steven Levesque  - MRS

1. **MRS Enterprises Inc.**

Specialty Contractor –

- Metal Wall Systems
- Composite Panel Systems
- Metal Roof Systems
- Structural Steel
- Pre engineered Metal Buildings
- Miscellaneous Metals
- Glass & Glazing
- Louvers

**Signatory to SMWIA since 1986**

**"Last of the Mohicans"  Only remaining SMWIA signatory contractor active in New England capable of pursuing large / complex projects**

2. **New England Market**

Construction Management - Impact on the Marketplace
Packaging of Trades
Signatory to Carpenters
Glass & Glazing Contractors major players
Canadian Manufacturers impact on the marketplace
Open shop contractors

3. **Sheet Metal Workers in New England**

Core Business in HVAC
Architectural Sheet Metal
Sheet Metal Union a non factor in the exterior cladding of buildings

**Exhibit B**

**DESIGN BUILDERS • SPECIALTY CONTRACTORS • BUTLER PREENGINEERED BUILDING SYSTEMS**
**41 NORTHWEST DRIVE • PLAINVILLE, CT 06062 • (860) 747-4994 • FAX (860) 793-2202**
~ An Equal Opportunity Employer ~

### 4. Competition

Glass & Glazing Houses – signatory to other trades
Lymo Construction
Maddision Associates
Sunrise Erectors
Ken Herman Inc.
Open shop contractors
SMWIA – Local 40

### 5. Wage Disparity

Sheet metal versus Carpenters
Quality of Manpower
Productivity
Erosion of Profitability
Cannot Compete

### 6. Competing Trade Unions

Entrepreneurial attitude
Target money
Value MRS Enterprises Inc
Quality Manpower
Apprenticeship Training program
They "Fight for the Work"
Strategic Alliance between Competing Unions impacting Sheet Metal
Trend – Other trades doing the work previously performed by SMW

### 7. Delta Project

Lessons learned with Lymo – Signatory to SMWIA
April 8, 2003 meeting in Washington D.C.
Union promises not met
2 million dollar bond to Crown Corr
Quality of manpower – Untrained to perform the work
Journeyman to apprentice ratios
Unskilled work force to perform stud framing
Grievance – Admission of Responsibility
Financial impact to MRS – Discuss damages

**Delta Project should have been the poster project for the SMWIA to demonstrate their core competency in performing this type of work**

### 8. Future of MRS Enterprises / SMWIA

**SMWIA must share the risk with MRS Enterprises Inc.**

Financial restitution to MRS Enterprises Inc for Delta project.
Current – cash settlement
Long term financing
SMWIA - Commitment to market recovery
Target Money
Training of Employees
Bonifide Apprenticeship program
Specialty Agreement – Commitment moving forward

"Change the Culture" – We employ, not the SMWIA
Local union ( #40, #17,#38) - Employer friendly

**We have a choice in what trade we use going forward**

Carpenters
Ironworkers

**They value the potential wages and benefits we will pay over the next 20 years.**

**800,000 man hours per year.  $ 1.5 million in benefits paid per year**

**Next twenty year $ 30 – 50 million dollars in benefits**

## **Financial Terms**

$ 1,000,000 investment by SMWIA, in the name of MRS / SMWIA, to held in trust and managed for a period of ten years, annual rate of return 7%

$ 2,000,000 loan from SMWIA to MRS Enterprises Inc. simple interest at 3%, for a period of ten years

$ 2,000,000 loan to MRS to be repaid from the proceeds of the 1,000,000 investment

MRS to make annual, interest only payments to SMWIA on 2,000,000 loan

|  | SMWIA | MRS |
|---|---|---|
| 1,000,000 invested @ 7% for ten years | (1,000,000) | |
| 2,000,000 loan by SMWIA to MRS | (2,000,000) | |
| Debt repayment from investment proceeds | 2,000,000 | |
| Interest payments on 2,000,000, ten year term, @ 3% simple interest, per annum | 600,000 | |
| Target Money – Provided by SMWIA to MRS Enterprises for Market Recovery- next ten years | TBD | |
| Benefits paid to SMWIA over the next ten years by MRS Enterprises Inc, based on current level of manpower | | 15,000,000 |

2.3 M - owed to Bank

# EXHIBIT C

Case 1:05-cv-10694-JLT    Document 5    Filed 06/10/2005    Page 13 of 18

**MRS ENTERPRISES, INC.**

February 1, 2005



Mr. Michael Sullivan
General President
Sheet Metal Workers International Association
1750 New York Avenue, N.W.
Washington, D.C. 20006

Dear Michael,

Pursuant to our meeting last Friday, January 28, I am submitting, for your review, the outstanding financial and non financial issues affecting our continued relationship with the Sheet Metal Workers International Association.

First and foremost, MRS Enterprises requests monetary compensation from the SMWIA for issues arising out of our use of sheet metal workers on the Delta project. We have documented and submitted a summary of these costs to you, along with a suggested method of remuneration.

Secondly, we request tangible evidence that the Specialty Agreement will be embraced in New England on non prevailing wage projects. Of particular concern is the following:

- Designate SMWIA Agent for MRS Enterprises in New England – one point of contact
- Revise Specialty Agreement wage / rate structure to ensure cost competitiveness against open shop labor
- Mobility of our workforce throughout New England unencumbered by local union manpower / ratio requirements
- Ability to provide all new hires with "specialty class" union books without prejudice

Thirdly, we request that the SMWIA address the following issues on prevailing wage work:

- Wage disparity between Sheet metal Workers and Carpenters
- Classification / Assignment of work - Role of SMWIA / local union to ensure various state Department of Labor agencies properly classify and police assignment of work.
- Mobility of our workforce unencumbered by local union manpower / ratio requirements

**Exhibit C**

DESIGN BUILDERS • SPECIALTY CONTRACTORS • BUTLER PREENGINEERED BUILDING SYSTEMS
41 NORTHWEST DRIVE • PLAINVILLE, CT 06062 • (860) 747-4994 • FAX (860) 793-2202
~ An Equal Opportunity Employer ~

Fourth, we request that that the SMWIA and MRS Enterprises develop a strategy regarding the following issues pertaining to market recovery:

- Construction Mgrs / GC's – Signatory to Carpenters – impact on our ability to secure work using sheet metal workers
- Construction Management – Combining of work into bid packages not historically performed by sheet metal workers
- Use of multiple trade unions to secure work / increase market share
- Target Money on a project by project basis when competing against other trade unions or open shop companies
- Marketing campaign by SMWIA in the New England marketplace extolling the benefits of using Sheet Metal Workers as the craft labor of choice

Fifth, we request that all ongoing grievances against MRS Enterprises by the SMWIA / Local Sheet Metal Workers Unions are dismissed without stipulation or financial impact to MRS Enterprises Inc.

Lastly, we request that both the SMWIA and MRS Enterprises Inc. meet on a quarterly basis to discuss current market conditions, trends, competition and upcoming projects so that we can collectively develop a strategic plan to secure work for our respective organizations.

Please feel free to contact me should you require further clarification on the above mentioned covenants

Thank you, in advance, for your due diligence and timely response in this regard.

Sincerely,

*Steven D. Levesque*
Steven D. Levesque

Cc: Joseph Nigro, SMWIA
    Roland O Levesque Sr., MRS Enterprises Inc.

# EXHIBIT D



# SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION

1750 New York Avenue, N.W.
Washington, D.C. 20006-5386
Phone: (202) 783-5880
Fax: (202) 662-0894



JOSEPH J. NIGRO
Assistant to the General President

March 2, 2005

Mr. Steven D. Levesque
MRS Enterprises, Inc.
41 Northwest Drive
Plainville, CT 06062

Dear Mr. Levesque:

This letter is in response to the financial and non-financial issues you submitted in your letter of February 1, 2005.

First, with respect to the financial issues, the International is not authorized by its Constitution to loan money. No monies of the International may be loaned to any person or corporation. Since the investment was structured to repay the loan, the investment you proposed will not be necessary. In any event, our Constitution does set forth an investment policy which would not include the type of investment proposed. Constitutionally, and therefore legally, the SMWIA is unable to provide the monetary assistance MRS Enterprises is seeking.

With respect to the Specialty Agreement (National Siding and Decking Agreement), the General President has the assurances of the business managers of our New England locals and assures you that MRS Enterprises will have full mobility of manpower throughout New England for siding work. The wage structure of the Siding and Decking Agreement will not be revised although target money may be available. The Siding and Decking Agreement will be renegotiated shortly and become effective June 1, 2005. The General President will designate an International employee as the point of contact for MRS Enterprises in New England. Further, the General President agrees with your request that the SMWIA and MRS Enterprises meet on a quarterly basis to discuss current market conditions, trends, competition and upcoming projects in order to develop collectively a strategic plan to secure the sheet metal work.

On prevailing wage work, the carpenters wages are generally below the wages for sheet metal workers throughout the United States. I am sure that our local unions will continue to police prevailing wage projects to be sure that sheet metal wages are being paid for sheet metal work. Our local unions will work with you on prevailing wage projects within the legal limits of the law. Ratios are not required unless a particular state prevailing wage law has established a ratio requirement.

With respect to ratios, MRS Enterprises in retrospect never took advantage of the ratios in the Siding and Decking Agreement to utilize to the full extent possible specialty workers it could have brought from its own area. This subject should be discussed at our next meeting.

Exhibit D

We are aware that there are several major construction managers and general contractors who are signed to the Carpenters in New England. The SMWIA and other trades believe that the Carpenters' subcontracting clause if applied to the entire project is unlawful and subject to legal challenge. The SMWIA is prepared to take on that challenge given the correct set of facts. The General President's office should be advised if MRS Enterprises is being compelled to use carpenters instead of sheet metal workers for sheet metal work on any project.

The SMWIA does not have a separate job targeting fund. Many of our local unions do have such funds. The business managers of our New England locals have agreed to review the rules of their respective job targeting funds to help MRS Enterprises to compete.

Your points concerning the effects of combining of work into bid packages by construction managers, as well as marketing the benefits of using sheet metal workers on siding, decking and metal roofs, are well taken. Pursuing these points will take time, as you can imagine, but the General President is committed to pursuing them and wishes to discuss these issues at the next quarterly meeting with you.

With respect to ongoing grievances against MRS Enterprises, the business managers agreed at our meeting to place all grievances in abeyance for the time being.

The General President is committed to working diligently with MRS Enterprises and other siding contractors to compete effectively throughout New England. Please advise when you would like to meet in the next quarter, April - June.

Sincerely,

Joseph J Nigro

Joseph Nigro
Assistant to the General President

JN/PJR/pas
cc: Michael J. Sullivan, Gen. Pres.
    Thomas J. Kelly, Gen. Sec. Treas.
    Joseph Bergantino, Bus. Mgr., LU 17
    Stephen Quaranto, Bus. Mgr., LU 38
    David A. Roche, Bus. Mgr., LU 40
    Kevin Mulcahy, Bus. Mgr., LU 63

opeiu #2