# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M.R.S. ENTERPRISES, INC. | C.A. NO.:  05 10694 JLT |
| Plaintiff, | |
| v. | |
| SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION LOCAL 17 - BOSTON, and SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, | |
| Defendants. | |

## DEFENDANT
## SHEET METAL WORKERS INTERNATIONAL ASSN.'S
## MEMORANDUM IN SUPPORT OF
## MOTION TO STAY PENDING ARBITRATION AND, IN THE
## ALTERNATIVE, MOTION TO STAY MERITS DISCOVERY
## [ORAL ARGUMENT REQUESTED]

Michael T. Anderson, BBO#645533
DAVIS, COWELL & BOWE, LLP
8 Beacon Street, 4th Floor
Boston, MA 02108
Tel: (617) 227-5720
Fax: (617) 227-5767

Attorneys for Defendant Sheet Metal
Workers International Association,
AFL-CIO

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Collective-Bargaining Agreement . . . . . . . . . . . 2
    B.    Step 1 Grievance Discussions . . . . . . . . . . . . . . . . . . . 3
    C.    The Union Moves the Grievance to Step 2 . . . . . . . . . 5

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.    THE UNION IS ENTITLED TO A STAY OF THE
    LITIGATION PENDING ARBITRATION. . . . . . . . . . . . . . . 6

    A.    The Union May Seek a Stay After Moving to Dismiss. . 6

    B.    The Court Must Stay Proceedings Where There is
           an Pending Arbitration of the Dispute. . . . . . . . . . . 6

    C.    This Dispute is Arbitrable. . . . . . . . . . . . . . . . . . . 7

          1.    The Union has not waived arbitration. . . . . 7

          2.    Any claim that the Union waived arbitration must
               be resolved by the arbitrator. . . . . . . . . . . 9

          3.    The Union's right to arbitrate pre-expiration
               grievances has not been affected by the May 31,
               2005 expiration of the agreement. . . . . . . . . . 10

    D.    The Employer May Not Attack the "Partiality" of the
           Arbitration Procedure It Agreed To. . . . . . . . . . . . . . 11

          1.    The Employer agreed to the contract arbitration
               procedure. . . . . . . . . . . . . . . . . . . . . . . . . . 11

i

# TABLE OF CONTENTS

2.      The Employer may not ask the Court to impose a different arbitration procedure than the agreement provides. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

3.      The Employer may not attack the impartiality of the arbitration board before an award is issued. . .  13

E.      The Employer Does Not Have a Non-Arbitrable Misrepresentation Claim. . . . . . . . . . . . . . . . . . . . . .  14

II.     AT A MINIMUM, THE COURT SHOULD STAY MERITS DISCOVERY UNTIL IT HAS RESOLVED THE ISSUE OF ARBITRABILITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . .  17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Sheet Metal Workers International Ass'n ("the International Union") moved to dismiss this breach-of-contract suit because the Plaintiff M.R.S. Enterprises ("the Employer") failed to exhaust the contract's grievance-arbitration procedures. (Dkt. 2.) On August 8, 2005, this Court denied this motion without prejudice to its renewal at the close of discovery. (Dkt. 16.)

On August 17, 2005, the International Union took the initiative to move M.R.S. Enterprises' Step 1 grievance forward to the next step of the arbitration procedure. *See* Declaration of Michael T. Anderson In Support of Motion to Stay, Ex. A. The matter will now proceed before the National Siding and Decking Grievance Panel. *Id.*, Ex. C.

The Court should stay this litigation now pending this ongoing proceeding. *Drake Bakeries, Inc. v. Local 50, Bakery & Confectionery Workers Union*, 370 U.S. 254, 264 (1964). At a minimum, the Court should stay any merits discovery (*i.e.*, all discovery that does not relate to the arbitrability of this grievance) until the Court has resolved the question of arbitrability. *Lummus Co. v. Commonwealth Oil Refining Co.*, 273 F.2d 613, 613-614 (1st Cir. 1959).

## STATEMENT OF FACTS

The background facts are set forth in the International Union's Memorandum In Support of Motion to Dismiss and supporting affidavits. (Dkt. 3-6.) For the Court's convenience, we set forth the relevant points again here.

1

## A.     The Collective-Bargaining Agreement

The Employer is suing the International Union for breach of a collective-bargaining agreement, the National Siding and Decking Agreement ("the Agreement").  Complaint, ¶7.  That Agreement is attached as Ex. A to the Riley Aff. (Dkt. 4).

As the Employer acknowledges, the Agreement contains a mandatory grievance and arbitration procedure.  Complaint, ¶24.  That procedure, Article X, is a three-step process which begins with Step 1 (informal settlement "if possible"), which may be appealed by either party in the absence of a resolution to Step 2 (a two-member Siding and Decking Grievance Panel), whose decision is in turn appealable to Step 3 (a six-member Siding and Decking Arbitration Board).  The full text of the relevant sections of Article X provides:

> **ARTICLE X**
>
> The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article.  The grievance procedures of the National Siding and Decking Agreement are the sole and exclusive remedy for any asserted breaches of this Agreement and supersede the grievance procedures of any other collective bargaining agreement that the Employer is signatory.
>
> SECTION 1.  Step 1.  Grievances of the Employer or the Union arising out of the interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible.  Both parties may participate in conferences through representatives of their choice.
>
> To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

2

**SECTION 2.**  Step 2.  Grievances not disposed of under the procedure described in Section 1 of this Article may be appealed jointly or by either party to the Siding and Decking Grievance Panel ("Grievance Panel").  Duplicate copies of the appeal shall be mailed to the following addresses: Siding and Decking Grievance Panel, 25800 Northwestern Highway, Suite 1000, Southfield, Michigan 48075 and Sheet Metal Workers International Association Jurisdictional Department, 1750 New York Avenue, N.W., Washington, D.C. 20006.  The Grievance Panel shall be composed of two (2) members, one (1) of which shall be appointed by the General President of the Sheet Metal Workers International Association and one (1) of which shall be appointed by the National Association of Siding and Decking Contractors.  Both sides shall have equal voting power.  The Grievance Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Grievance Panel.

The Grievance Panel is empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation. Except in the case of deadlock, the decision of the Grievance Panel shall be final and binding.

**SECTION 3.**  Step 3.  Grievances not settled as provided in Section 2 of this Article may be appealed jointly or by either party to the Siding and Decking Arbitration Board ("Arbitration Board").  The Arbitration Board shall consist of three (3) members appointed by the Union and three (3) members appointed by the Association.  Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board.  Appeals to the Arbitration Board shall be submitted within thirty (30) days after termination of the procedures described in Section 2 of this Article.  The decision of the Arbitration Board shall be final and binding.

Riley Aff., Ex. A (Dkt. 4).

## B.    Step 1 Grievance Discussions

On November 22, 2004, the Employer's former counsel Jane I. Milas sent a letter to International Union President Michael J. Sullivan, attached as Ex. B to the Riley Affidavit (Dkt. 4).  The letter reads:

3

Re:    M.R.S. Enterprises, Inc.
          Delta Terminal A at Logan Airport

Dear Mr. Sullivan:

This office represents M.R.S. Enterprises, Inc. in connection with the above-referenced project. Pursuant to Article X, section 1 of the Agreement between M.R.S. Enterprises, Inc. ("MRS") and the Sheet Metal Workers International Association ("SMWA"), MRS raises the following grievance:

Breach of the Agreement by the SMWA in connection with the Delta Terminal A project at Logan Airport, for failure to supply duly qualified Building Trades Journey persons, Specialty Sheet Metal Workers, and Specialty Trainees in sufficient numbers and ratios stipulated during the April 8, 2003 meeting in Washington, D.C. as may be necessary to properly execute work contracted for the Employer in the manner and under the conditions specified in the Agreement.

MRS requests that this grievance proceed to step one, as provided in Article X, Section 1 of the Agreement.

Sincerely yours,

Jane I. Milas

On January 28, 2005, International Union General President Michael J. Sullivan and his Assistant Joseph J. Nigro met with Roland and Steven Levesque of M.R.S. Enterprises to discuss several pending issues, including M.R.S. Enterprises' claim of monetary loss at the Terminal A Logan Airport project. Steven Levesque Aff., ¶9 (Dkt. 13); Nigro Aff. at ¶¶6-7 (Dkt. 5.) Four days later, Employer representative Steven Levesque wrote a letter fleshing out M.R.S. Enterprises' demand for over $3.5 million in damages. Nigro Aff., ¶8 and Ex. C (Dkt. 5). From February 1 through March 4, 2005, Mr. Levesque and the Union exchanged e-mails, in which M.R.S. Enterprises sought a "formal response" to the issues raised in the January 28

4

meeting, including the damage claim.  Steven Levesque Aff., Ex. F (Dkt.
13.)  International Union officer Joseph Nigro responded with a March 2,
2005 letter rejecting the Employer's demand.  Nigro Aff., ¶9 and Ex. D
(Dkt. 5).

M.R.S. Enterprises did not invoke Step 2 of the grievance procedure
by appealing to the National Siding and Decking Committee.  (Dkt. 4, 6;
Riley Aff.,¶4; McClees Aff. ¶6 and Ex. A).  Instead, it filed this lawsuit on
April 7, 2005.

### C.    The Union Moves the Grievance to Step 2.

On August 17, 2005, the International Union invoked its right under
Article X, Section 2, to bring the unresolved grievance before the Step 2
Panel.  Anderson Decl., Ex. A.  Even though the Union is the responding
party who denies the claim, the Agreement allows "either party" to take the
grievance to Step 2 at any time.  There are no time limits for such an appeal
in the Agreement.  *See* Article X, section 2, Dkt. 4, Ex. A.

On August 18, 2005, the National Association of Siding and Decking
Contractors acknowledged the Step 2 Appeal, and notified the parties of the
two designated panelists.  Anderson Decl., Ex. C.  The panelists will notify
the National Siding and Decking Contractors "shortly, of the date and time
of the hearing."  *Id*.

### STANDARD OF REVIEW

Courts are instructed to resolve arbitrability disputes in "an
expeditious and summary hearing" with "restricted inquiry into factual
issues."  *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
460 U.S. 1, 22-23 & n.27 (1983).  Courts must resolve doubts in favor of
arbitrability, including any issue of "waiver, delay or a like defense to

arbitrability," *id.,* 460 U.S. at 24-25; *see also Bechtel Construction, Inc. v. Laborers' Int'l Union*, 812 F.2d 750, 752-753 (1st Cir. 1987).

Discovery and pre-trial litigation are inconsistent with arbitration. *Lummus Co. v. Commonwealth Oil Refining Co.*, 273 F.2d 613, 613-614 (1st Cir. 1959); *Thomas O'Connor & Co. v. Insurance Co. of North America*, 697 F.Supp. 563, 566-567 (D.Mass. 1988) (right of arbitration bars court discovery on matters to be arbitrated.)

## ARGUMENT

### I.    THE UNION IS ENTITLED TO A STAY OF THE LITIGATION PENDING ARBITRATION.

#### A.    The Union May Seek a Stay After Moving to Dismiss.

The International Union may properly move to stay pending arbitration after moving to dismiss the complaint. *Creative Solutions Group, Inc. v. Pentzer Corp.*, 252 F.3d 28, 33 (1st Cir. 2001).

Here, the Union moves to stay prior to discovery, without invoking the litigation machinery beyond these threshold motions. A stay motion is proper under these circumstances. *Id.*; *Sharif v. Wellness Int'l Network*, 376 F.3d 720, 726-727 (7th Cir. 2004) (citing cases).

#### B.    The Court Must Stay Proceedings Where There is an Pending Arbitration of the Dispute.

While the Court deferred decision of the International Union's motion to dismiss until the end of discovery, the Court may not similarly defer a stay motion while a live arbitration is pending. Now that the International Union has taken the initiative to move the grievance forward to Step 2, arbitration is not merely a defense, but an ongoing proceeding before the National Siding and Decking Grievance Panel.

6

A stay of a damages action alleging breach of a collective-bargaining agreement is required until the parties have completed arbitration proceedings. *Drake Bakeries, Inc. v. Local 50, Bakery & Confectionery Workers Union*, 370 U.S. 254, 264 (1964). *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).

In passing on a motion for a stay, the Court "may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint*, 388 U.S. at 404. As we show in Part II, below, the Court may not permit discovery and further litigation on the merits until the threshold issue of arbitrability is decided.

### C.    This Dispute is Arbitrable.

The Employer concedes that this dispute is subject to a mandatory grievance-arbitration procedure defined in the collective-bargaining agreement. Complaint, ¶24, Dkt. 1.

Yet the Employer has given shifting rationales for why it is not obligated to arbitrate. In its Complaint, the Employer alleged that the Union had waived arbitration through its pre-litigation conduct. Dkt. 1, ¶26. In opposing the Motion to Dismiss, however, the Employer shifted its position to repudiate the contractual procedure as an unfair "kangaroo court." Dkt. 13 at 11. We address each argument in turn.

### 1.    The Union has not waived arbitration.

All parties agree that the Employer initiated a Step 1 grievance under Article X, section 1 of the Agreement on November 22, 2004. The Complaint initially claimed that the Union has "refused and continue[s] to refuse to respond" to this grievance. Dkt. 1, Complaint, ¶26.

7

This claim is simply wrong, in light of the undisputed facts. All parties agree that the International Union met with M.R.S. to discuss its damages demand on January 28, 2005, with follow-up correspondence over the following month fleshing out the Employer's $3.5 million claim and asking for the Union's "formal response." Dkt. 5, Nigro Aff. ¶¶7-10, Exs, B and C; Dkt. 13, Steven Levesque Aff. ¶¶9-12, Ex. F. On March 2, 2005, the Union responded by rejecting the Employer's demands. Dkt. 5, Ex. D; Dkt 13, Ex. G.

M.R.S. now argues that, in light of the Union's rejection of its damages demand, any further attempt to pursue the grievance through Steps 2 and 3 of the Agreement would be futile. Dkt. 13, Steven Levesque Aff. ¶12. This confuses the Union's rejection of the Employer's substantive settlement demands with a refusal to arbitrate the dispute.

If the Employer was dissatisfied with the Union's settlement position, it was required to take its grievance forward to the next step. The Employer could have filed a Step 2 appeal at any time, with or without the Union's participation. Any grievance that has not been settled at Step 1 "may be appealed jointly or *by either party* to the Siding and Decking Grievance Panel." Article X, Section 2 (emphasis added.) Step 1 provides no time limits, and requires no formal structure for settlement discussions. Even if the International Union had completely refused to respond, the Employer would have been free to take its grievance to the Siding and Decking Grievance Panel unilaterally under Step 2.

When an employer initiates a grievance, the burden of moving it forward through the contractual procedure rests with the <u>employer</u>, not the union. *See Drake Bakeries*, 370 U.S. at 266-267. As the non-complaining

defendant, the Union had no obligation to move the Employer's grievance forward prior to suit. *See Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 17 (1st Cir. 2005); *Mautz & Oren, Inc., v. Teamsters Local 279*, 882 F.2d 1117, 1126 (7th Cir. 1989); *United Ass'n of Journeymen v. Int'l Maintenance Co.*, 251 F.Supp.2d 1296, 1308 (M.D. La. 2002).

The Employer's ability to move the grievance to Step 2 also defeats any claim of prejudice. If its opponent's inaction has not prevented the plaintiff from moving forward with arbitration, the plaintiff cannot show the prejudice necessary to avoid arbitration. *Creative Solutions Group*, 252 F.3d at 32-33. Now that the International Union has gone the extra mile to move M.R.S.'s grievance forward, the Court must stay proceedings. The International Union's current invocation of Step 2 moots any argument that it has been too passive until now. *See Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1050 (1st Cir. 1977) (where parties eventually went forward to arbitration, claim that company engaged in "foot-dragging" beforehand was moot.)

### 2.   Any claim that the Union waived arbitration must be resolved by the arbitrator.

If the Employer wishes to argue that the Union forfeited its right to arbitration by its pre-litigation conduct, it must make this argument to the arbitrator, not the court. "[T]he arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability. . .'" *Howsam v. Dean Witter Reynolds, Inc.* 537 U.S. 79, 84 (2002). This has long been the law of this Circuit in labor arbitration cases. It is for the labor arbitrator, not the Court, to decide whether a union's inaction has forfeited its right to arbitration. *General Dynamics Corp. v. Local 5, Marine & Shipbuilding Workers*, 469

F.2d 848, 853-854 (1st Cir. 1972); *H & M Cake Box, Inc. v. Bakery Workers Local 45*, 493 F.2d 1226, 1227 (1st Cir. 1974).

Nor has the International Union compromised its right to arbitration in this Court. The International Union has consistently asserted, from its opening motion to dismiss, that M.R.S.'s claim may not be litigated in court because it is subject to a mandatory grievance-arbitration requirement. The International Union brings this motion to stay prior to the Rule 26(f) conference, prior to initial disclosures or any discovery proceedings. The International Union has notified M.R.S. that it will not seek discovery or initial disclosures until arbitrability is resolved. Anderson Decl., Ex. B. The Union's stay motion is properly made. *See Creative Solutions Group*, 252 F.3d 28 at 33.

> **3.    The Union's right to arbitrate pre-expiration grievances has not been affected by the May 31, 2005 expiration of the agreement.**

The Employer's duty to exhaust the grievance procedure has not been excused by the May 31, 2005 expiration of the Agreement. The Employer claims a breach of contract arising in 2003-2004, <u>during</u> the term of the Agreement. Complaint, ¶18. As such, the Employer must proceed through the grievance-arbitration procedure, even if the Agreement has subsequently expired. *See Litton Fin. Printing v. NLRB*, 501 U.S. 190, 205 (1991) ("if a dispute arises under the contract . . . it is subject to arbitration even in the postcontract period."); *Providence Journal Co. v. Providence Newspaper Guild*, 308 F.3d 129, 132 (1st Cir. 2002).

10

**D.    The Employer May Not Attack the "Partiality" of the Arbitration Procedure It Agreed To.**

The Employer's current justification for failing to invoke Step 2 is not that the Union has repudiated arbitration.  To the contrary, it is the Employer who rejects the entire arbitration procedure as a "kangaroo court." Dkt. 13 at 11.  This argument is meritless.

**1.    The Employer agreed to the contract arbitration procedure.**

The members of the Step 2 Grievance Panel and the Step 3 Arbitration Board are half appointed by the Union and half by management (through the National Association of Siding and Decking Contractors.)  *See* Article X, sections 2 and 3, Riley Aff., Ex. A.  Such bipartite arbitration boards are common in labor agreements – their authority is enforced by federal labor policy as much as the authority of single third-party arbitrators. *See General Drivers Local 89 v. Riss & Co.*, 372 U.S. 517, 518-519 (1963).

The Employer complains that the Union-appointed members of the Step 2 and Step 3 Boards will be partisans against its claim.  Dkt. 13 at 7-11.  The problem with this argument is that the Employer knowingly agreed to this bipartite procedure when it signed the National Siding and Decking Agreement.  The Employer may not be heard to attack the fairness of a procedure it voluntarily agreed to.  *JCI Communications, Inc. v. Electrical Workers Local 103*, 324 F.3d 42, 51-52 (1st Cir. 2003); *Nationwide Mut. Ins. Co. v. First State Ins. Co.*, 213 F.Supp.2d 10, 17 (D.Mass. 2002) (parties to arbitration agreement "can ask no more impartiality than inheres in the method they have chosen.")

In *JCI Communications*, the First Circuit rejected an attack on the "partiality" of a joint arbitration board half composed of union-appointed

11

members and half composed of industry representatives. 324 F.3d at 46 &
n.2. The employer complained that the industry representatives were its
competitors, but the First Circuit held that the employer knew the
composition of the arbitration board when it signed the contract. "[P]artisan
arbitrators are generally permissible if that is what the parties' arbitration
clause contemplated." *JCI Communications*, 324 F.3d at 51, *quoting Delta
Mine Holding Co. v. AFC Coal Props., Inc.*, 280 F.3d 815, 821 (8th Cir.
2001). The First Circuit held that the requirement of impartiality is
inapposite where a collective-bargaining agreement itself provides for a
bipartite board with party-appointed members. *JCI Communications*, 324
F.3d at 51-52. The First Circuit approved *Sheet Metal Workers Int'l Ass'n
Local 420 v. Kinney Air Conditioning Co.,* 756 F.2d 742, 746 (9th Cir.
1985) (Kennedy, J.), a case involving the same Sheet Metal Workers
arbitration procedure at issue here. Since *Kinney*, the courts have repeatedly
rejected the argument the Employer makes here:

> Given that the collective bargaining agreement clearly provides
> that all appeals from unresolved grievances will be arbitrated
> by representatives of the Union and the local employers'
> association, which is traditionally composed of management
> representatives engaged in the sheet metal industry, it is
> difficult to imagine who else Goss would have expected to
> arbitrate its dispute. Goss received exactly what it bargained
> for. *Cf. Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673, 679
> (7th Cir.) ("The parties to an arbitration choose their method of
> dispute resolution, and can ask no more impartiality than
> inheres in the method they have chosen."), *cert. denied,* 464
> U.S. 1009 (1983).

*Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers Int'l Union
Local 104*, 933 F.2d 759, 764-765 (9th Cir. 1991). *See also Sheet Metal
Workers Local 162 v. Jason Mfg., Inc.*, 900 F.2d 1392, 1398 (9th Cir. 1990).

12

### 2.    The Employer may not ask the Court to impose a different arbitration procedure than the agreement provides.

The Employer says it may be willing to arbitrate its claim, but only before a different arbitrator than the one it agreed to in the National Siding and Decking Agreement. Dkt. 13 at 11. It asks the Court to appoint its own "impartial" arbitrator in lieu of the procedures of Article X. *Id*.

The Employer may not ask the Court to change the agreed-on arbitration procedure. *Otis Elevator Co. v. Elevator Constructors Local 4*, 408 F.3d 1, 9 (1st Cir. 2005). In *Otis Elevator*, the First Circuit reversed an order compelling arbitration on different terms than the parties' agreement provided:

> Only the procedures of the Agreement, voluntarily agreed upon in good faith by the parties, could be enforced by the court... The equitable powers of a court are not a warrant for reforming the conditions of a collective bargaining agreement.

*Otis Elevator*, 408 F.3d at 9. After *Otis*, the Employer may not expect this Court to order arbitration on different terms than the parties agreed.

### 3.    The Employer may not attack the impartiality of the arbitration board before an award is issued.

In any event, the Employer's attack on the impartiality of the contract arbitrators is premature until an award is issued. "[I]t is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of the award." *Aviall, Inc. v. Ryder Systems, Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) (citing cases.) The Employer's objection to the partiality of the arbitrators does not go to the arbitrators' jurisdiction – this is a procedural objection that may not be raised in Court until after an award is

13

issued.  *See also Gulf Guaranty Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 490 (5th Cir. 2002).

### E.    The Employer Does Not Have a Non-Arbitrable Misrepresentation Claim.

Finally, the Employer has suggested that it could bring a second, unpleaded tort claim for misrepresentation separate from its claim for breach of contract.  Dkt. 13 at 10-11.  The Employer argues that such a tort claim would not be subject to arbitration.

This is incorrect.  Even if such a claim were added to the Complaint, a tort claim for "misrepresentation" would still be governed by §301 of the LMRA, and it would still be subject to arbitration.  The assurances the Employer alleges to have been false (that the Union would supply qualified workers for the Delta Terminal A project) were simply restatements of the contractual obligations of Article IV, Section 1.  *See* Complaint, ¶¶ 11, 13, 18, Dkt. 1.  This tort claim would depend on an interpretation of whether the Union breached Article IV, Section 1 as to the Delta project.  This claim would therefore fall within the parties' agreement to arbitrate grievances "arising out of the interpretation or enforcement of this Agreement."  The First Circuit reads such language to cover contract-related tort claims as well as explicit breach-of-contract claims:

> The contracts provide for arbitration of "any controversy or claim arising out of or relating to this Agreement or the breach thereof."  Broad language of this nature covers contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort . . .

*Acevedo Maldonado v. PPG Industries*, 514 F.2d 614, 616 (1st Cir. 1975).

14

Plaintiffs may not circumvent the pro-arbitration policy of §301 by repleading contract claims in tort. This is why a claim challenging a union's compliance with a collectively-bargained obligation is completely preempted by the LMRA, even if it is pleaded in tort. *Flibotte v. Pennsylvania Truck Lines,* 131 F.3d 21, 26 (1st Cir. 1997), *citing Steelworkers v. Rawson*, 495 U.S. 362, 369 (1990), and *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220 (1985). A claim for misrepresentation or promissory estoppel may be brought as part of an LMRA breach-of-contract action, but it may not be brought independently. *Utility Workers Local 369 v. NSTAR Electric & Gas Corp.*, 317 F.Supp.2d 69, 72 (D.Mass. 2004). It follows that a claim for "misrepresentation," even if one were properly added, would be subject to arbitration on the same grounds applicable to the present claim.

In any event, even if such a tort claim were deemed non-arbitrable in itself, it would still properly be subject to the stay pending arbitration of the parallel breach-of contract claim. *See Sevinor v. Merrill Lynch*, 807 F.2d 16, 20-21 (1st Cir. 1986); *Bowlby v. Carter Mfg*, 138 F.Supp.2d 182, 188 (D.Mass. 2001) (court has authority to stay both arbitrable and nonarbitrable issues pending completion of arbitration, in the interests of judicial economy.)

## II.    AT A MINIMUM, THE COURT SHOULD STAY MERITS DISCOVERY UNTIL IT HAS RESOLVED THE ISSUE OF ARBITRABILITY.

The parties do not appear to dispute the existence of the Agreement and the parties' communications after the Step 1 grievance was filed. If there were any genuinely contested issues of fact material to arbitrability,

15

the International Union would not object to discovery bearing on this issue. But the Court must, at a minimum, bifurcate proceedings so that discovery on the merits of the case is stayed until arbitrability has been decided.

The Court may not require the parties to engage in full merits discovery prior to deciding arbitrability. "In passing upon a [FAA] §3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).

The First Circuit holds that a district court may not require discovery on the merits of a case while a party's motion to stay pending arbitration is being litigated, even on appeal: "[A] court order of discovery would be affirmatively inimical to appellee's obligation to arbitrate, if this court determines it to have such obligation. It seems clear that if arbitration is to be had of the entire dispute, appellee's right to discovery must be far more restricted than if the case remains in federal court for plenary trial." *Lummus Co. v. Commonwealth Oil Refining Co.*, 273 F.2d 613, 613-614 (1st Cir. 1959) (reversing district court's denial of a stay of discovery pending disposition of appeal on arbitrability.) *Lummus* remains the law. *See Intergen NV v. Grina*, 2003 WL 1562200 at *3 (D.Mass. 2003) (following *Lummus*); *Paperworkers Local 900 v. Boise Cascade Corp.*, 683 F.Supp. 280, 284-285 (D.Me. 1988) (following *Lummus*).

A "refusal to stay discovery on the merits . . . until the issue of arbitrability is resolved puts the cart before the horse. If a dispute is arbitrable, responsibility for the conduct of discovery lies with the arbitrators. . ." *Cigna Healthcare v. Kaiser*, 294 F.3d 849, 855 (7th Cir.

16

2002) (Posner, J.)  *See also Suarez-Valdez v. Shearson Lehman/American Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988) (granting writ of mandamus where district court allowed discovery to proceed pending arbitration:  "The district court erred in refusing to stay discovery.  An agreement to arbitrate is an agreement to proceed under arbitration and not under court rules.")

The Court should therefore stay discovery on the merits until the question of arbitrability is resolved.

## REQUEST FOR ORAL ARGUMENT

The Court should grant oral argument to permit a full discussion of the issues in this motion.  The International Union believes that a hearing allowing 15 minutes per side will be useful to the Court.

## CONCLUSION

The Court should stay this litigation pending the ongoing arbitration before the National Siding and Decking Grievance Panel.  In the alternative, the Court should stay any discovery not related to the arbitrability of this claim until the Court has resolved the arbitrability issue.

Dated:  August 19, 2005             Respectfully submitted,

DAVIS, COWELL & BOWE, LLP


   /s/   Michael Anderson
Michael T. Anderson, BBO # 645533

8 Beacon Street, 4th Floor
Boston, MA 02108
Tel: (617) 227-5720; Fax: (617) 227-5767

Attorneys for Defendant Sheet Metal
Workers International Association, AFL-CIO

17