UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M.R.S. ENTERPRISES, INC. )<br>    Plaintiff )<br> )<br>V. )<br> )<br>SHEET METAL WORKERS' )<br>INTERNATIONAL ASSOCIATION )<br>LOCAL 17 - BOSTON, and )<br>SHEET METAL WORKERS' )<br>INTERNATIONAL ASSOCIATION )<br>    Defendants ) | C.A. NO.  05-CV-10694-JLT |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER
DIRECTING THE PARTIES TO SELECT A NEUTRAL ARBITRATOR

The Plaintiff, M.R.S. Enterprises, Inc. (MRS) files this memorandum of law in support of its Motion for an Order Directing the Parties to Select a Neutral Arbitrator filed herewith. The memorandum is a reprint of a portion of the memorandum of law filed by MRS in it Opposition to the Joint Motion to Dismiss filed by the Defendants in June 2005.

INTRODUCTION

In June, 2005, the Defendants filed a Joint Motion to Dismiss the Plaintiff's Complaint. The Plaintiff opposed the motion arguing, inter alia, that it could not get a fair hearing before the arbitration panels as structured in Article X of the collective bargaining agreement because of bias of the arbitrators. Half of the arbitration panel would be appointed by and employees of the Defendant Sheet Metal Workers International Association (SMWIA) the primary Defendant in

this case. In August, 2005 after the Court denied the Defendants Joint Motion to Dismiss, Defendants filed a Joint Motion to Stay these proceedings and Order the parties to complete the arbitration pursuant to Article X of the collective bargaining agreement. On January 18, 2006, this Court allowed the Defendants' motion and ordered the parties to complete the arbitration pursuant to Article X.

For the reasons stated below, the Plaintiff again respectfully suggests to the Court that it will not get a fair hearing before the arbitration panel, half of which will be appointed by the Defendant, SMWIA and further praying for an order directing the parties to select a neutral arbitrator.

ARGUMENT

<u>The Arbitration Clause Does Not Provide for an Impartial Arbitrator</u>

The claim by M.R.S. is not the typical grievance that is contemplated by a grievance arbitration procedure such as that contained in Article X, Section 1 of "the Agreement". For the most part, grievances occur between the local union referring sheet metal workers to the employer. If the local union representative and the employer cannot resolve the issue through Step 1, either party can then get an evaluation of its grievance through the Siding and Decking Grievance Panel which is composed of one employer appointed by the National Association of Siding and Decking Contractors (NASDC) and one union member appointed by the SMWIA. (Article X, Section 2) Presumably, the employer and the international union representative can give a fair hearing to the local union and local employer regarding the merits of the grievance. The arbitration can become final and binding at Step 2 unless the panel deadlocks. In the case of a deadlock, the parties then may proceed to the last step before the Siding and Decking Arbitration Board, which consists of three employers appointed by NASDC and three union

representatives appointed by the SMWIA. (Article X, Section 3) For the following reasons, it is clear that M.R.S. could not obtain a fair hearing before an impartial arbitrator as contemplated by both the LMRA, the FAA and the strong Federal Court policy of deference to arbitration. See United Steel Workers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 and its progeny.

A.   Grievance is Against the SMWIA

In this case, M.R.S. is seeking monetary damages from the SMWIA for misrepresentation of the skill and ability of the sheet metal workers that would be referred to M.R.S. on the Terminal A project and for breach of "the Agreement" provision that requires M.R.S. to obtain its employees from the SMWIA and its local affiliated union in the area where the contract is to be performed. M.R.S. has specifically alleged that the SMWIA caused it serious monetary damage as a result of its failure to live up to the promises made at the April 8, 2003 meeting in Washington, DC. The SMWIA, therefore, is the party against whom the grievance was filed.

B.   The Defendant is the Arbitrator

At Step 2 and Step 3 of the grievance procedure, which the SMWIA claims were not pursued by M.R.S., one half of the arbitration panels, one member at the Step 2 level and three members at the Step 3 level, are representatives of the SMWIA. In fact, at the Step 3 level, Michael J. Sullivan, President of the SMWIA, either sits as an arbitrator or appoints the three SMWIA representatives. The so-called Defendants in this grievance will be sitting as judges at the arbitration hearing. How can M.R.S. possibly get a fair hearing especially when it is seeking a multi-million dollar monetary damage award against the SMWIA? There is no impartial arbitrator. As the National Labor Relations Board stated in Sinclair Refining Company and Oil, Chemical and Atomic Workers International Union, AFL-CIO, 145 N.L.R.B. 732,

> "Although the third arbitrator was in terms one of the three arbitrators or the third arbitrator, he was in effect *the* arbitrator. The company and the union arbitrators were admittedly partisans…In the proceeding before the impartial arbitrator, the two partisans arbitrators represented respectively, the Company and the Union, and they were, in practice, at that stage, representatives or advocates for those whom they represented." Id at p.736 note 5.

Even if M.R.S. concedes that its January 28, 2005 meeting with Michael J. Sullivan and Joseph Nigro constituted a Step 1 Grievance Procedure, the futility of pursuing the grievance to Step 2 and maybe Step 3 (if there was a deadlock reached at Step 2) becomes glaringly apparent. The International President and his Special Assistant have already told M.R.S. that they will not pay any money damages for the Terminal A project. See the March 2, 2005 letter from Nigro, Exhibit G to Exhibit 1, the Affidavit of Steven D. Levesque. At the Step 2 level of the grievance procedure, it is highly likely that either Michael J. Sullivan or Joseph Nigro or two other employees of Michael J. Sullivan, would serve as the SMWIA representatives on the Step 2 Grievance Panel. Even more absurd, would be a hearing at Step 3 where Michael J. Sullivan, possibly Joseph Nigro, and at least two other employees of Michael J. Sullivan would sit as half of the "Arbitration Board" hearing the M.R.S. grievance seeking multi-million dollar damages against Michael Sullivan and his SMWIA.

> "Arbitrator is defined in Black's ( Black's Law Dictionary, fourth edition) as a *private, disinterested person*, chosen by the parties to a disputed question, for the purpose of hearing their contention and giving judgment between them" <u>University Overland Express, Inc. and Robert H. Connor</u>, 129 N.L.R.B. 82, 90 (1960)

It is absurd for the Defendants to claim that M.R.S. should have exhausted its administrative remedies by pursuing its grievance against a Defendant who would be serving as the judge. *"No qualification is more important than that of impartiality. It may well be that no person can be absolutely free from bias or prejudice of any kind, but it is not too much to expect*

*an arbitrator to be able to put aside any personal inclinations and stand between the parties with an open mind."* Elkouri & Elkouri, How Arbitration Works, 6th Edition, Chapter 4.9.C, p. 182 (2003) How is the SMWIA going to put aside its personal stake in this grievance and stand between itself and M.R.S. with an open mind, as "a disinterested person to give judgment"? The answer is obvious, there is no way that the SMWIA can serve in any capacity on an arbitration panel that entertains the grievance of M.R.S. See Pitta v. Hotel Association of New York City, Inc. 806 F.2d 419,424 note 2 (1986). An arbitration award may be vacated if there is "evident partiality" of the arbitrator, 9 U.S.C. Sec. 10 (b) (1982), a standard that may be met by inferences from objective facts inconsistent with impartiality. Citing Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145 (1968). See also Crow Construction Company v. Jeffrey M. Brown Assoc., Inc. 264 F. Supp 2d 217, 220. "Congress vested the federal courts with the power to vacate an arbitration award where there was evident partiality in the arbitrators."

C.     The Employer is not Unwilling to Arbitrate the Dispute

M.R.S. is not seeking to avoid arbitration but simply seeking to obtain a fair hearing before an impartial arbitrator. The Order Staying this Proceeding and Directing the Parties to Arbitrate should be modified to require arbitration before an impartial arbitrator agreed to by both parties or, in the absence of an agreement, appointed by the Court. If M.R.S. were forced to continue to pursue arbitration through Article X, Section 1 of "the Agreement", it would end up with a final and binding decision issued by the SMWIA, the principle Defendant in this case, and then be left with the extremely limited scope of review by the District Court. *"No qualification is more important than that of impartiality."* Elkouri & Elkouri, supra.

CONCLUSION

- 6 -

Based on the foregoing argument and the cases cited therein, M.R.S. should not be forced to pursue an arbitration procedure before a kangaroo court. M.R.S. is entitled to a fair hearing before an impartial arbitrator and respectfully requests that this Court direct the parties to arbitrate before an impartial arbitrator agreed to by the parties or appointed by the Court.

                                              M.R.S. ENTERPRISES, INC.
                                              By its attorney,

DATED: January 20, 2006                         *James F. Grosso*
                                                  James F. Grosso – BBO 213320
                                                  O'Reilly, Grosso & Gross, P.C.
                                                  1671 Worcester Road, Suite 205
                                                  Framingham, MA 01701-5400
                                                  Tel: 508/620-0055
                                                  Fax: 508/620-7677