## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M.R.S. ENTERPRISES, INC.<br><br>       Plaintiff,<br><br>  v.<br><br>SHEET METAL WORKERS'<br>INTERNATIONAL ASSOCIATION<br>LOCAL 17 - BOSTON, and<br>SHEET METAL WORKERS'<br>INTERNATIONAL ASSOCIATION,<br><br>      Defendants. | C.A. NO.:   05 10694 JLT |

## DEFENDANT
## SHEET METAL WORKERS INTERNATIONAL ASSN.'S
## MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR ORDER DIRECTING THE PARTIES
## TO SELECT A NEUTRAL ARBITRATOR

Michael T. Anderson, BBO #645533
DAVIS, COWELL & BOWE, LLP
8 Beacon Street, 4th Floor
Boston, MA 02108
Tel:  (617) 227-5720; Fax: (617) 227-5767

Attorneys for Defendant Sheet Metal
Workers International Assn., AFL-CIO

**TABLE OF CONTENTS**

INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Collective-Bargaining Agreement  . . . . . . . . . . . . . . . . . 2

    B.    The Step 1 Grievance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    The Union Moves the Grievance to Step 2.  . . . . . . . . . . . . . 4

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.    THE EMPLOYER MAY NOT ATTACK THE
          "PARTIALITY" OF THE ARBITRATION
          PROCEDURE IT AGREED TO.  . . . . . . . . . . . . . . . . . . . . . 5

          A.    The Employer Agreed to the Contract
                Arbitration Procedure: *JCI*
                *Communications*.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          B.    The Employer May Not Ask the Court to
                Select a Different Arbitrator than the
                Agreement Provides: *Otis Elevator*.  . . . . . . . . . . . . . 9

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**INTRODUCTION**

On January 17, 2006, the Court allowed Defendant Sheet Metal Workers International Assn.'s motion to stay pending arbitration.  Plaintiff M.R.S. Enterprises ("M.R.S." or "the Employer") unsuccessfully opposed that motion, arguing that the contract's grievance procedure is unfair.  (Dkt. 23 at 2-4.)  M.R.S. now repeats that argument, in a motion to appoint a different arbitrator than the agreed-on grievance panel.

By re-positioning itself as a party <u>seeking</u> arbitration (albeit in a different forum than it agreed to) M.R.S. is asking this Court for an appealable order.  *See Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 5 (1st Cir. 2004) (claim for reference to a particular arbitrator appealable.)  Now that it has filed this motion, M.R.S. must appeal immediately once the motion is denied – otherwise M.R.S. will have permanently waived its claim that it is entitled to a different arbitrator. *Franceschi v. Hospital General San Carlos, Inc.*, 420 F.3d 1, 4 (1st Cir. 2005) (failure to file an immediate appeal after denial of an arbitration motion waives the issue.)

The Court should reject this motion, for the same reasons it rejected M.R.S.'s arguments against the stay.

-1-

## STATEMENT OF FACTS

The background facts are set forth in the International Union's Memorandum In Support of Motion to Stay.  (Dkt. 18.)  For the Court's convenience, we set forth the relevant points again here.

### A.    The Collective-Bargaining Agreement

M.R.S. is suing the International Union for breach of a collective-bargaining agreement, the National Siding and Decking Agreement ("the Agreement").  Complaint, ¶7; Ex. A to Riley Aff. (Dkt. 4).

As M.R.S. acknowledges, the Agreement contains a mandatory grievance-arbitration procedure.  Complaint, ¶24.  Article X provides a three-step process which begins with Step 1 (informal settlement), which may be appealed by either party to Step 2 (a two-member Siding and Decking Grievance Panel).  If the matter is not resolved at Step 2, the dispute may be appealed to Step 3 (a six-member Siding and Decking Arbitration Board).  The relevant sections of Article X provide:

**ARTICLE X**

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article.  The grievance procedures of the National Siding and Decking Agreement are the sole and exclusive remedy for any asserted

-2-

breaches of this Agreement and supersede the grievance
procedures of any other collective bargaining agreement that
the Employer is signatory.

SECTION 1.  Step 1.  Grievances of the Employer or the Union
arising out of the interpretation or enforcement of this
Agreement, shall be settled between the Employer directly
involved and the duly authorized representative of the Union, if
possible.  Both parties may participate in conferences through
representatives of their choice.

* * *

SECTION 2.  Step 2.  Grievances not disposed of under the
procedure described in Section 1 of this Article may be
appealed jointly or by either party to the Siding and Decking
Grievance Panel ("Grievance Panel").  Duplicate copies of the
appeal shall be mailed to the following addresses: Siding and
Decking Grievance Panel, 25800 Northwestern Highway, Suite
1000, Southfield, Michigan 48075 and Sheet Metal Workers
International Association Jurisdictional Department, 1750 New
York Avenue, N.W., Washington, D.C. 20006.  The Grievance
Panel shall be composed of two (2) members, one (1) of which
shall be appointed by the General President of the Sheet Metal
Workers International Association and one (1) of which shall
be appointed by the National Association of Siding and
Decking Contractors.  Both sides shall have equal voting
power. * * *

The Grievance Panel is empowered to render such decisions
and grant such relief to either party as they deem necessary and
proper, including awards of damages or other compensation.
Except in the case of deadlock, the decision of the Grievance
Panel shall be final and binding.

SECTION 3.  Step 3.  Grievances not settled as provided in
Section 2 of this Article may be appealed jointly or by either

-3-

party to the Siding and Decking Arbitration Board ("Arbitration Board"). The Arbitration Board shall consist of three (3) members appointed by the Union and three (3) members appointed by the Association. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the Arbitration Board shall be submitted within thirty (30) days after termination of the procedures described in Section 2 of this Article. The decision of the Arbitration Board shall be final and binding.

Riley Aff., Ex. A (Dkt. 4).

### B.    The Step 1 Grievance

On November 22, 2004, M.R.S. commenced a Step 1 grievance over staffing at the Delta terminal at Logan Airport. Ex. B to Riley Affidavit (Dkt. 4). After informal discussions, the International Union rejected the Employer's settlement demand on March 2, 2005. Nigro Affidavit, ¶9 and Ex. D (Dkt. 5).

M.R.S. Enterprises did not invoke Step 2 of the grievance procedure. (Dkt. 4, 6; Riley Aff.,¶4; McClees Aff. ¶6 and Ex. A). Instead, it filed this lawsuit on April 7, 2005.

### C.    The Union Moves the Grievance to Step 2.

On August 17, 2005, the International Union invoked its right under Article X, Section 2, to bring the unresolved grievance before the Step 2 Panel. Dkt. 19, Ex. A. Even though the Union is the responding party who

denies the claim, the Agreement allows "either party" to take the grievance to Step 2 at any time.  *See* Article X, section 2, Dkt. 4, Ex. A.

On August 18, 2005, the National Association of Siding and Decking Contractors acknowledged the Step 2 Appeal.  Dkt. 19, Ex. C.  The parties have agreed to hold these Step 2 proceedings in abeyance until the Court's resolution of the stay issues.

## ARGUMENT

## I.     THE EMPLOYER MAY NOT ATTACK THE "PARTIALITY" OF THE ARBITRATION PROCEDURE IT AGREED TO.

M.R.S. repeats its unsuccessful argument against the Union's Motion to Stay.  It complains that the contract's arbitration procedure is unfair, because it directs disputes to an industry panel composed equally of union-appointed and management-appointed representatives.  M.R.S. argues that union representatives on the panel will be biased.  M.R.S. Memo., Dkt. 25 at 3-5.  It cites *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145 (1968), for the rule that arbitrators must be disinterested.  M.R.S. Memo. at 5.  It concludes that the contractual procedure should be replaced with a different procedure chosen by the Court.  *Id*. at 5.

This argument is meritless.

-5-

### A.    The Employer Agreed to the Contract Arbitration Procedure: *JCI Communications*.

The problem with M.R.S.'s argument is that it knowingly <u>agreed</u> to this procedure when it signed the National Siding and Decking Agreement.

Bipartite arbitration boards are common in collective bargaining agreements.  Federal labor law gives joint union-management boards the same authority as third-party arbitrators.  *See General Drivers Local 89 v. Riss & Co.*, 372 U.S. 517, 518-519 (1963).  M.R.S.'s argument would change that law, because if M.R.S. were right, any joint arbitration board would be disqualified from arbitrating contract disputes because its members are "partial."  This is not the law.

M.R.S. knew the makeup of the Article X arbitration panels when it signed the Agreement.  M.R.S. may not be heard to attack the fairness of a procedure it voluntarily agreed to.  *JCI Communications, Inc. v. Electrical Workers Local 103*, 324 F.3d 42, 51-52 (1st Cir. 2003); *Nationwide Mut. Ins. Co. v. First State Ins. Co.*, 213 F.Supp.2d 10, 17 (D.Mass. 2002) (parties to arbitration agreement "can ask no more impartiality than inheres in the method they have chosen.")

-6-

In *JCI Communications*, the First Circuit rejected an identical attack on the "partiality" of a joint arbitration board half composed of union-appointees and half composed of industry representatives. 324 F.3d at 46 & n.2. Like M.R.S., the employer in *JCI Communications* complained that the labor representatives were union agents and the industry representatives were its competitors. But the First Circuit rejected the bias claim, because the employer knew the composition of the arbitration board when it signed the contract. "[P]artisan arbitrators are generally permissible if that is what the parties' arbitration clause contemplated." *JCI Communications*, 324 F.3d at 51, *citing Delta Mine Holding Co. v. AFC Coal Props., Inc.*, 280 F.3d 815, 821 (8th Cir. 2001). The First Circuit held that the requirement of impartiality is inapposite where a collective-bargaining agreement itself provides for a bipartite board with party-appointed members:

> This claim is a far cry from *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968), where at the time of the arbitration hearing the party that subsequently challenged the award lacked even an "intimation" of the source of the alleged bias. *Id.* at 147-48; *see Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985) (Kennedy, J.) ("cases in which courts have faulted arbitrators for their failure to disclose potential sources of bias are inapposite" where the CBA contemplated that management representatives on an arbitral panel might be a party's competitors) (citation omitted).

-7-

*JCI Communications*, 324 F.3d at 51-52.

The First Circuit's approval of Judge (now Justice) Kennedy's opinion in *Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.,* 756 F.2d 742, 746 (9th Cir. 1985) is decisive here. *Kinney* involved the same Sheet Metal Workers contract arbitration procedure at issue in this case.  Since *Kinney*, the courts have repeatedly rejected the "bias" objections to the Sheet Metal Workers procedure that M.R.S. makes here:

> Finally, [the employer] Goss argues that the [Adjustment Board's] decision should be reversed because the board was biased since the labor representatives on the board were Union agents and the management representatives were employed by businesses in competition with Goss. Given that the collective bargaining agreement clearly provides that all appeals from unresolved grievances will be arbitrated by representatives of the Union and the local employers' association, which is traditionally composed of management representatives engaged in the sheet metal industry, it is difficult to imagine who else Goss would have expected to arbitrate its dispute.  Goss received exactly what it bargained for.  *Cf. Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673, 679 (7th Cir.) ("The parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen."), *cert. denied,* 464 U.S. 1009 (1983).

*Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers Int'l Ass'n*

-8-

*Local 104*, 933 F.2d 759, 764-765 (9th Cir. 1991).  *See also Sheet Metal*

*Workers Local 162 v. Jason Mfg., Inc.*, 900 F.2d 1392, 1398 (9th Cir. 1990).

**B.    The Employer May Not Ask the Court to Select a
Different Arbitrator than the Agreement Provides:
*Otis Elevator*.**

M.R.S. now says it is willing to arbitrate its claim, but only before a

different arbitrator than the one it agreed to in the National Siding and

Decking Agreement.  M.R.S. Memo. at 5.  M.R.S. asks the Court to appoint

its own "neutral" arbitrator in lieu of the procedures of Article X.  *Id.*

The Court has no authority to change the agreed-on arbitration

procedure.  *Otis Elevator Co. v. Elevator Constructors Local 4*, 408 F.3d 1,

9 (1st Cir. 2005).  In *Otis Elevator*, the First Circuit reversed an order

directing arbitration on different terms than the parties' agreement provided:

> Only the procedures of the Agreement, voluntarily agreed upon
> in good faith by the parties, could be enforced by the court...
> The equitable powers of a court are not a warrant for reforming
> the conditions of a collective bargaining agreement.

*Otis Elevator*, 408 F.3d at 9.  After *Otis Elevator*, M.R.S. may not ask this

Court to order arbitration on different terms than the parties agreed.  *See*

*also KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising*

*Corp.*, 184 F.3d 42, 48 (1st Cir. 1999) ("Under the FAA, the court must

order the parties to arbitrate 'in accordance with the terms of the agreement'; one term of the agreement is the parties' forum selection clause.")  M.R.S. must raise any objections to any individual panel member with the arbitration board itself.  *JCI Communications*, 324 F.3d at 51-52. But M.R.S. may not ask the Court to devise its own arbitration process in place of the one the parties agreed on.  *Id*.

## CONCLUSION

The Court should deny M.R.S. Enterprises' motion for appointment of a different arbitrator than the parties contracted for.

DATED:  January 30, 2006          Respectfully submitted,

_____
Michael T. Anderson, BBO #645533
DAVIS, COWELL & BOWE, LLP
8 Beacon Street, 4th Floor
Boston, MA 02108
Tel:  (617) 227-5720; Fax: (617) 227-5767

Attorneys for Defendant Sheet Metal
Workers International Assn., AFL-CIO

50/C:\DCB\MTA\MRS opp memo FINAL.wpd
01/30/2006/08:40:38 USM 4925